Jeanette **JONES**, Employee–Appellant,

v.

**WASHINGTON UNIVERSITY,**
Employer/Insurer–
Respondent,

v.

**Treasurer of Missouri, as Custodian of the Second Injury Fund, Additional Party–Respondent.**

No. ED 89644.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 4, 2007.

1. Employer's motion to dismiss Claimant's appeal for Rule 84.04 violations, taken with the case, is denied.

Sally I. Heller, St. Louis, MO, for Employee–Appellant.

Mary Anne Lindsey, Karl Kessinger, St. Louis, MO, for Employer/Insurer–Respondent.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael T. Finneran, St. Louis, MO, for Additional Party–Respondent.

KENNETH M. ROMINES, Judge.

### Introduction

Jeanette Jones appeals the decision of the Labor and Industrial Relations Commission, after it denied permanent total disability benefits and Second Injury Fund benefits on her workers' compensation claim. We are faced with the question of whether the Commission's choice in this case to follow one expert's opinion when three others disagree constitutes a decision that is against the overwhelming weight of the evidence. We hold that it does not. We affirm the Commission's award.

### Factual and Procedural Background

Jones worked as a nurse at Washington University from May 1980 to April 2001. This case began as the result of an incident that took place at work on 30 December 2000. At that time, Jones was working in the outpatient dialysis unit. The incident occurred as Jones was setting up a male patient's dialysis. She bent over

the patient's chest to clean off his access, and as she did so, the patient reached inside her blouse and grabbed her breast. Jones removed the patient's hand and yelled at him, telling him he was not allowed to touch her. At the time, Jones felt shocked and embarrassed. She also felt humiliated because the patient was laughing at her. There was another nurse, Patricia Jackson, in the room when it happened, and she left to report it. Jones also reported the incident to Kathy York, the charge nurse. Jones continued to care for patients, including the patient who assaulted her, until her shift was over.

In the coming months, Jones continued to work her regular hours, but she also began inquiring about receiving psychological treatment, because she was still very upset about the 30 December incident. Jones began to see a therapist, Dr. Davids, in January 2001. Dr. Davids diagnosed Jones with Post Traumatic Stress Disorder (PTSD) along with depression and panic disorder. On or about 21 February 2001, Jones stopped going to work. Jones resigned from her position at Washington University on 20 April 2001. As of the time this appeal was filed, Jones had not worked in any capacity since 21 February 2001. She has continued to receive treatment from various therapists and psychiatrists because she has experienced feelings of depression and has been unable to do much of what she used to, including regular housework, socializing with friends, and going to church. She has had nightmares and trouble sleeping, and she also has had panic attacks and crying spells.

In January 2005, Jones filed a claim for workers' compensation to cover the cost of her treatment, because she believed all her symptoms had been caused by the incident on 30 December 2000. Dr. Davids, along with two other psychiatrists, Dr. Rutledge and Dr. Zia, all concluded that Jones' symptoms were the result of the incident at work. In the original claim, Jones was seeking temporary total disability, permanent total disability, and payment of both past and future medical bills for treatment of mental injury. After a hearing, the ALJ found that under § 287.120.8,[1] Jones' mental injuries were not compensable because she could not prove that her stress was extraordinary and unusual. Jones then filed an Application for Review to the Labor and Industrial Relations Commission ("Commission"), which adopted and affirmed the Award of the ALJ. Jones appealed to this Court, and we reversed. *Jones v. Washington University*, 199 S.W.3d 793 (Mo.App. E.D.2006). We held that the ALJ had improperly applied § 287.120.8, because Jones' claim did not arise from work-related stress, but from a physical assault which took place at work. *Id.* at 796. We therefore instructed the Commission to apply § 287.120.1 and determine whether Jones' injury arose out of and in the course of her employment. *Id.* at 797.

The Commission reviewed the testimony from the previous hearing and ultimately issued an award reversing the ALJ's award. The testimony included that from various doctors who had either treated Jones in the past, or who had examined her in relation to the hearing and reviewed her medical records. Dr. Rutledge, who had been treating Jones since March of 2003, testified that Jones had chronic PTSD and that the assault was a substantial factor in causing her condition. He testified that she was permanently and totally disabled as a result. He stated that she met the DSM[2] criteria for PTSD be-

---

1. All statutory references are to RSMo. (2000) unless otherwise noted.

2. DSM or DSM–IV refers to the *Diagnostic and Statistical Manual of Mental Disorders*,

cause Jones felt that her life was threatened by the incident. He testified that she did not have any preexisting personality disorders.[3] Dr. Liss, a psychiatrist, also testified on behalf of Jones. He performed an examination of her in May 2003 and reviewed her history. He agreed with the diagnosis of PTSD, and that the assault was a substantial factor in Jones' development of PTSD. He also agreed that the DSM criteria were met because Jones believed the event to be life-threatening. He said that Jones' psychiatric illness alone was evidence of permanent total disability. Mr. James England, a licensed and certified rehabilitation vocational counselor, also testified on behalf of Jones. He had examined Jones and tested her in his office. Mr. England testified that based on Jones' emotional problems alone, she is permanently and totally disabled.

Jones also called Dr. Volarich to testify. He observed that Jones has various physical injuries, including chronic lower back and knee injuries. He assessed a 20% permanent partial disability (PPD) of the body as a whole due to Jones' back injuries, and a 35% PPD of the body as a whole due to her knee injury. He diagnosed Jones with major depression and panic disorder related to the assault, but he deferred to a treating psychiatrist for a rating of the primary injury. He also deferred to a vocational expert regarding Jones' employability.

Dr. Stillings was the only expert to testify on behalf of Washington University. He examined Jones in October 2003, and he reviewed her medical records. He diagnosed Jones with major depressive disorder with psychotic features including adjustment disorder. He explicitly stated

that she did not have PTSD because the assault was not of the nature or severity which could produce PTSD. He concluded that her major depressive disorder preexisted the work incident, and that the disorder was involutional, meaning it had an onset later in life, coming possibly years after the events causing it. He diagnosed her with preexisting schizoid and avoidance personality traits. He testified that the assault was not a substantial factor in causing Jones' major depressive disorder, but it was a cause of her adjustment disorder. He found a 2 to 3% permanent partial psychiatric disability as a result of her adjustment disorder. Dr. Stillings also found that Jones had reached maximum medical improvement (MMI) for her adjustment disorder as of April 2001, because adjustment disorders typically improve within six months of the event causing them. He did agree that Jones was totally disabled from working, but he found this to be the result of her other disorders, not her adjustment disorder.

The Commission concluded that under § 287.120.1, Jones' suffered an accident at work; and that under § 287.120.3(2), that accident arose out of and in the course of Jones' employment. The Commission found Dr. Stillings to be the most credible and persuasive expert, and thus concluded Jones suffered a 5% permanent partial psychiatric disability to the body as a whole due to her adjustment disorder diagnosed by Dr. Stillings. The Commission also concluded that Jones was not entitled to benefits from the Second Injury Fund, because she was not able to show that her preexisting conditions, physical or mental, were a hindrance to her employment be-

---

4th ed., which was published by the American Psychiatric Association in 1994 and is considered the standard reference text for psychiatric diagnoses.

3. These would appear in Axis II of a DSM analysis. All doctors except Dr. Stillings found that Jones had no Axis II diagnosis.

fore 30 December 2000. As to temporary total disability, the Commission found the work incident alone was not severe enough to cause Jones to miss work. The Commission awarded Jones past medical expenses to cover her treatment with a counselor and psychiatrist for her adjustment disorder in the amount of $465. The Commission also awarded $6,285.20 for PPD benefits. As to future medical expenses, the Commission found that because Jones had reached MMI for the adjustment disorder, and because the adjustment disorder was the only ailment attributable to the work incident, that Jones was not entitled to any compensation for future medical treatment.

Jones appeals the Commission's award on the following grounds. First, she argues that the Commission erred in finding that her injury caused by the assault was adjustment disorder as opposed to PTSD. Second, Jones argues that the Commission erred in its assessment of 5% PPD as opposed to permanent total disability. Third, Jones argues alternatively that if the Commission did find only 5% PPD from the work-related injury, it erred in not awarding relief from the Second Injury Fund because all doctors agree that Jones is permanently and totally disabled now. Fourth, Jones argues the Commission erred in refusing to award all past and future medical expenses. And finally, Jones argues the Commission erred in failing to find that she was entitled to temporary total disability benefits.

### Standard of Review

■■■ This Court is limited to reviewing questions of law, and we can reverse on any of the following grounds:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

§ 287.495; *Jones v. Washington University,* 199 S.W.3d 793, 795 (Mo.App. E.D. 2006). We liberally construe all provisions of the workers' compensation law to favor the claimant. *Jones,* 199 S.W.3d at 796. Our task is a single determination whether, considering the whole record, there is sufficient competent and substantial evidence to support the award. This standard would not be met in the rare case when the award is contrary to the overwhelming weight of the evidence. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 223 (Mo.2003).

### Discussion

#### Injury Diagnosis

■■■ Jones first argues that the Commission erred in finding that she suffered adjustment disorder as a result of the assault, rather than PTSD. We note that the employee has the burden of proving, to a reasonable probability, that her injury resulted from the accident to which she attributes it. *Silman v. William Montgomery & Associates,* 891 S.W.2d 173, 175 (Mo.App. E.D.1995). Proper opinion testimony as to causal connection is competent and can constitute substantial evidence. Id. at 176. We are not to review the weight the Commission gave to expert opinions if each was based on competent and substantial evidence. *Smith v. Climate Engineering,* 939 S.W.2d 429, 431 (Mo.App. E.D.1996); *see also Johnson v. Denton Construction Co.,* 911 S.W.2d 286, 288 (Mo.1995) (holding the decision to accept one of two conflicting medical opinions is an issue of fact for determination by the Commission).

Here, the Commission had the opinions of at least four experts on which to base its decision, and it chose to rely on Dr. Stillings. Jones argues not that Dr. Stillings' testimony is incompetent, but that we should reverse the conclusion because it is against the overwhelming weight of the evidence. Dr. Stillings was the only physician who concluded that Jones did not have PTSD, and that she suffered adjustment disorder. He was the only physician who concluded that a preexisting late onset major depressive disorder was the cause of her permanent disability.[4] There is some case law shedding light on when an award may be reversed as against the overwhelming weight of the evidence. *See, e.g., Lagud v. Kansas City Bd. of Police Commissioners,* 136 S.W.3d 786, 796 (Mo. 2004) (reversing because the self-contradicting testimony of a single witness cannot constitute substantial evidence, and the overwhelming weight of the evidence supported the opposite conclusion); *Knisley v. Charleswood Corp.,* 211 S.W.3d 629, 637–38 (Mo.App. E.D.2007) (reversing because the Commission found expert credible yet ignored his uncontroverted opinion); *Townser v. First Data Corp.,* 215 S.W.3d 237, 242–44 (Mo.App. E.D.2007) (reversing because Commission made findings contradictory to undisputed doctors' reports); *Zimmerman v. City of Richmond Heights,* 194 S.W.3d 875, 879 (Mo.App. E.D.2006) (reversing because the Commission's finding as to the expert's opinion was directly contradicted by expert's deposition testimony); *Jennings v. Station Casino St. Charles,* 196 S.W.3d 552, 560–61 (Mo.App. E.D.2006) (reversing because the ALJ had modified based on "additional significant evidence," but a review of the record showed the expert's opinion had stayed exactly the same).

However, there are no factual similarities to those cases in the present case. We do not see that the Commission either ignored undisputed evidence, or chose to rely on an expert who contradicted himself. Jones simply seems to be arguing that because there were at least three doctors who agreed she suffered from PTSD, and only one who did not, that ratio constitutes the overwhelming weight of the evidence. However, the test is not based on the number of experts who agree, but rather whether their opinions were based on substantial and competent evidence. Here, experts gave contradictory opinions, all of which were based on substantial and competent evidence because each doctor examined the patient and her history. Given that, the Commission is free to believe whichever expert it chooses, and it is in the best position to do so. Therefore, we will not disrupt the Commission's decision. Point denied.

### Extent of Disability Assessed

■ Here, Jones argues that all of the doctors agreed that she was permanently and totally disabled, and thus the Commission should have so found and ordered relief accordingly. It is true that all doctors agreed that Jones was permanently and totally disabled. However, Dr. Stillings attributed this to a preexisting condition of major depressive disorder, and not to her work-related adjustment disorder, which he assess as causing only 2 to 3% of her disability. The Commission found that Jones had suffered a 5% PPD due to her work-related injury. Therefore, the Com-

---

4. Jones makes much in her brief of the fact that, as she claims, "major depressive disorder" is not contained in the DSM–IV. Jones' real criticism is that Dr. Stillings was not able to readily locate it. The code for major depressive disorder is anything with 296.2 or 296.3 as the first four digits. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed.1994).

mission was consistent in its reliance on Dr. Stillings' testimony. It was free to do so, as discussed above, and we will not disrupt the Commission's findings in this respect. Point denied.

### Second Injury Fund Liability

■ Jones argues in her third point that because all experts agree that she is permanently and totally disabled from working, she should be eligible for relief from the Second Injury Fund because her preexisting physical injuries combined with her work-related injury to cause her permanent and total disability. In order for a preexisting injury to qualify a person for the Second Injury Fund, the injury has to be of a type that would be a hindrance to the person's employability. *Tidwell v. Kloster Co.,* 8 S.W.3d 585, 589 (Mo.App. E.D.1999). Here, the Commission found that Jones had no physical or mental conditions that hindered her employment before the assault. Jones argues that her experts documented several physical ailments that limited her ability to work, and their opinions were not contradicted. However, Dr. Stillings attributed her current disability to her major depressive disorder. He found that it had deteriorated over time, which is consistent with such a disorder. The Commission noted that the Second Injury Fund is not liable for the progression of preexisting conditions. *Lammert v. Vess Beverages, Inc.,* 968 S.W.2d 720, 725 (Mo.App. E.D.1998). Unless that condition was a hindrance to Jones' employment *before* the assault, the Second Injury Fund is not liable. We find there was sufficient competent evidence to support the Commission's finding that Jones was not hindered in her work by any preexisting injury but that it is the progression of her depressive disorder causing her current disability. Thus the Second Injury Fund is not liable. Point denied.

### Past and Future Medical Expenses

Here Jones's argument disputing the medical expenses awarded is based on her other arguments that the Commission's award was against the weight of the evidence. She does not argue that the award is inconsistent with the Commission's determination of liability. The only reason we would adjust this award would be if we reversed on another point. Because we do not, we dismiss this point as moot.

### Temporary Total Disability

■ Under § 287.170, an injured employee is entitled to compensation during the continuance of temporary total disability. However, payments are unwarranted beyond the point at which the employee is capable of returning to work. *Boyles v. USA Rebar Placement,* 26 S.W.3d 418, 424 (Mo.App. W.D.2000). Dr. Stillings testified that he did not believe the incident at issue here was severe enough to cause Jones to miss work. And in fact, she returned to work in the months following the incident. Therefore, the Commission's finding that Jones was not entitled to temporary total disability benefits was warranted, based on our prior determination that it was proper for the Commission to rely on Dr. Stillings' opinion. Point denied.

### Conclusion

We hold that it was not against the overwhelming weight of the evidence for the Commission to choose to follow Dr. Stillings' testimony despite the fact that it was contrary to the testimony of other experts, because Dr. Stillings' testimony constituted substantial and competent evidence. Therefore, the Commission's medical expenses award was proper and consis-

tent with its findings, and there is no Second Injury Fund liability.

AFFIRMED.

KATHIANNE KNAUP CRANE, P.J., and ROBERT G. DOWD, JR., J., concur.