Linda CARDWELL, Appellant,

v.

TREASURER OF the STATE OF MISSOURI, as Custodian of the Second Injury Fund, Respondent.

No. ED 90226.

Missouri Court of Appeals,
Eastern District,
Division One.

April 15, 2008.

Ray B. Marglous, Clayton, MO, for Appellant.

Kevin Alan Nelson, Assistant Attorney General, St. Louis, MO, for Respondent.

ROBERT G. DOWD, JR., Judge.

Linda Cardwell ("Claimant") appeals the decision of the Labor and Industrial Relations Commission ("the Commission") upholding the decision of the administrative law judge ("the ALJ") awarding Claimant permanent partial disability benefits against the Second Injury Fund ("the Fund") in Injury No. 01–165842 and permanent total disability benefits against the Fund in Injury No. 02–032561. We affirm.

Claimant was an employee of Schnucks Markets, Inc. ("Employer") at the time of both her injury on May 31, 2001, Injury No. 01–165842 and her injury on April 4, 2002, Injury No. 02–032561. On both occasions, Claimant was working in the floral department, fell at work, and injured her lower back. After her first injury in 2001, Claimant was referred to Dr. Daniel Scodary ("Dr. Scodary"), a neurosurgeon. Dr. Scodary performed a hemilaminotomy and diskectomy to treat a right herniated disk. Claimant returned to work on light duty in February of 2002. Dr. Scodary eventually released Claimant to work on full duty without any medical restrictions.

Claimant re-injured her back on April 4, 2002. Claimant continued to work despite this injury up to the time of her second surgery by Dr. Scodary in July of 2003. In that surgery, Dr. Scodary performed an L4–5 and L5–S1 anterior lumbar interbody fusion with BAK cages to treat degenerative disc disease at L4–5 and L5–S1. Claimant was released from treatment by Dr. Scodary with restrictions on lifting and bending.

Claimant returned to see Dr. Scodary for evaluation and treatment. On March 21, 2005, Dr. Scodary performed a third lumbar surgery including an L4–5 and L5–S1 decompressive laminectocy, post-lateral fusion with stabilization screws and rods. This was to treat pseudoarthrosis from the fusion performed in July of 2003.

Claimant filed workers' compensation claims for each back injury. Claimant settled with Employer and then proceeded with her claims against the Fund. At the hearing, Claimant, who was fifty-five years old at the time of the hearing, stated she had graduated from high school. She testified about several preexisting medical issues with her neck, low back, right shoulder, wrists, knee, and depression. Specifically, Claimant testified she injured her neck in 1990, and Dr. Jonathan A. Gold performed a level anterior cervical fusion at C5–6. Claimant stated she continued to have neck pain after the procedure.

Claimant also testified she had a prior injury to her low back, which she treated with hot and cold packs. Claimant testified she was able to function reasonably well following this injury. Claimant testified she also injured her right shoulder. Claimant stated she never had surgery on that shoulder and stated she recovered well from that injury.

Claimant further testified she had problems with her wrists. Claimant stated she

had bilateral carpal tunnel syndrome. Claimant was treated with injections prior to her carpal tunnel release surgery performed by Dr. Scodary in 2005. Claimant also testified she had a prior knee injury in 1996. Claimant had arthroscopic surgery to repair the injury. Claimant testified she began suffering from depression in 1993 after her mother died. She testified that her neck injury and her inability to do all the things she used to be able to do exacerbated her depression.

However, Claimant testified in the time leading up to her May 31, 2001 injury, she was working full duty without medical restrictions for any condition. She also testified that she attributed her difficulties with daily living activities such as driving a car, lifting, going to the grocery store, sitting and standing, and other such functions to her last injury on April 4, 2002.

Dr. Jerome F. Levy ("Dr. Levy") testified by way of deposition and provided a report for Claimant. Dr. Levy issued reports dated November 9, 2004 and October 21, 2005. Dr. Levy stated in his first report that Claimant had a 20 percent permanent partial disability to her low back due to her May 31, 2001 work injury. Dr. Levy also stated Claimant had preexisting disabilities of 32 percent of the neck, 10 percent of the right shoulder, 15 percent of each wrist due to carpal tunnel syndrome, 15 percent of the right knee, and 5 percent referable to the low back. In Dr. Levy's second report, he opined Claimant had a 55 percent disability to her low back following her third surgery, 30 percent of which was due to the last injury. Dr. Levy did not change his other ratings. Dr. Levy opined Claimant's preexisting injuries were a hindrance and obstacle to employment.

Dr. Wayne Stillings ("Dr. Stillings"), a board certified psychiatrist, also testified by way of deposition and provided a report for Claimant. Dr. Stillings issued four reports. Dr. Stillings stated Claimant had a 50 percent permanent partial disability due to psychiatric factors. Dr. Stillings stated 25 percent was due to a pain disorder, and 25 percent was due to a mood disorder. Dr. Stillings opined that of each of these, 10 percent was preexisting relative to the April 4, 2002 injury.

James England ("Mr. England"), a vocational expert, further testified by way of deposition and provided a report on Claimant's behalf. Mr. England concluded Claimant was permanently and totally disabled because she could not compete in the open labor market due to her age, education, work experience, and medical conditions.

After the hearing, the ALJ issued his award finding Claimant was entitled to 21 weeks of permanent partial disability benefits from the Fund on Injury No. 01–165842 based upon 15 percent permanent partial disability of the body as a whole referable to the low back from that injury, combined with 12.5 percent permanent partial disability of the body as a whole referable to her psychiatric condition, and 25 percent permanent partial disability of the body as a whole referable to her neck from her 1990 injury. Relative to Injury No. 02–032561, the ALJ found that she was permanently and totally disabled due to a combination of her impairments. The ALJ awarded lifetime benefits beginning August 23, 2009. The ALJ found October 21, 2005 to be the date that Claimant reached maximum medical improvement based on Dr. Levy's report. The ALJ concluded that because Employer had settled its risk, the date of maximum medical improvement was relevant only for calculation of the Fund liability. The ALJ stated that Claimant was permanently and totally disabled as of October 22, 2005, and that Employer had liability for permanent par-

tial disability benefits for 200 weeks, or up to August 22, 2009.

Claimant appealed to the Commission as to both injuries. The Commission affirmed the decisions and awards of the ALJ. Claimant now appeals.

When a workers' compensation claim is appealed, we review only questions of law. Section 287.495, RSMo 2000.[1] We can modify, reverse, remand for rehearing, or set aside awards based on factual determinations only on the grounds prescribed by statute; that is, if the Commission acted in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent evidence to support the award. *Id.*

■ In reviewing a decision of the Commission, we examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, that is, whether the award is contrary to the overwhelming weight of the evidence. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003). To determine whether the award is supported by competent and substantial evidence, we examine the evidence in the context of the whole record. *Id.* at 223. An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence. *Id.* The Commission is responsible for determining the credibility of witnesses and the acceptance or rejection of testimony cannot be disturbed on review unless it is against the overwhelming weight of the evidence. *Townser v. First Data Corp.*, 215 S.W.3d 237, 242 (Mo.App. E.D.2007). In reviewing a workers' compensation award, we review the findings of the Commission and not those of the ALJ. *Id.* at 241. When, as here, the Commission affirms or adopts the findings of the ALJ, we review the decision and findings of the ALJ as adopted by the Commission. *Id.*

■ In her first point, Claimant contends the Commission erred with regard to Injury No. 01–165842 in finding Claimant's preexisting injuries to her right knee, bilateral carpal tunnel in her wrists, and a psychiatric condition did not meet the Fund threshold. We disagree.

Section 287.220 directs when compensation is to be paid from the Fund, as well as the amount of such compensation, in "[a]ll cases of permanent disability where there has been previous disability." The Fund is liable for permanent partial disability benefits as follows:

> If any employee who has a preexisting permanent partial disability whether from compensable injury or otherwise, of such seriousness as to constitute a hindrance or obstacle to employment or to obtaining reemployment if the employee becomes unemployed, and *the preexisting permanent partial disability, if a body as a whole injury, equals a minimum of fifty weeks of compensation or, if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability*, according to the medical standards that are used in determining such compensation, receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree or percentage of disability, in an amount equal to a minimum of fifty weeks compensation, if a body as a whole injury or, if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability, caused by the combined disabilities is substantially greater than that which would have resulted

1. All further statutory references are to RSMo 2000 unless otherwise indicated.

from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of the combined disabilities, the employer at the time of the last injury shall be liable only for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability.

Section 287.220.1. (Emphasis added.) Thus, statutory thresholds require that the preexisting permanent partial disability equals a minimum of 50 weeks for injuries to the body as a whole or 15 percent for major extremities. *Id.*

Here, the Commission found Claimant had preexisting permanent partial disabilities of 25 percent of the body as whole referable to the neck, 10 percent of the right knee, 5 percent of the right shoulder, 7.5 percent of each wrist, 5 percent of the body as a whole referable to the low back, and 2.5 percent of the body as a whole for the psychiatric condition. The Commission found only the 25 percent of the body as a whole referable to the neck met the required statutory threshold for Fund liability. The Commission further found only the preexisting disability to the neck was a hindrance or obstacle to employment because Claimant testified she continued to have problems with the neck and could not do lifting or overhead reaching. The Commission determined the other conditions did not constitute hindrances or obstacles to employment. The Commission based its determination on Claimant's testimony, the lack of substantial medical treatment records for those conditions, and the low amounts of disability attributable to those conditions.

■■■ "The determination of a specific amount or percentage of disability awarded to a claimant is a finding of fact within the unique province of the Commission." *Landers v. Chrysler Corp.,* 963 S.W.2d 275,

284 (Mo.App. E.D.1997), *overruled on other grounds by Hampton,* 121 S.W.3d at 226. In determining the percentage of disability, the Commission is not bound by the percentage estimates of medical experts and it may consider all of the evidence, including the testimony of the employee. *Eimer v. Board of Police Com'rs of Kansas City, Mo.,* 895 S.W.2d 117, 120 (Mo.App. W.D.1995), *overruled on other grounds by Hampton,* 121 S.W.3d at 228.

■■■ Claimant contends the Commission improperly disregarded and ignored competent, substantial, undisputed evidence of witnesses who were not shown by the record to have been impeached citing *Houston v. Roadway Express, Inc.,* 133 S.W.3d 173, 179 (Mo.App. S.D.2004). Claimant correctly states the law. The Commission may not arbitrarily disregard and ignore competent, substantial, and undisputed evidence of witnesses who are not shown by the record to have been impeached and the Commission may not base its findings upon conjecture or its own mere personal opinion unsupported by sufficient and competent evidence. *Copeland v. Thurman Stout, Inc.,* 204 S.W.3d 737, 743 (Mo.App. S.D.2006). This rule is not in contradiction to the general rule that acceptance or rejection of medical evidence is for the Commission and it is free to disbelieve uncontradicted and unimpeached testimony. *Id.* If the Commission expressly declared that it disbelieves uncontradicted or unimpeached testimony, or if reference to the award shows that the Commission's disbelief of the employee or his or her doctor was the basis of the award, then the general rule that the Commission is free to disbelieve uncontradicted and unimpeached testimony applies. *Id.* On the other hand, where the record is wholly silent concerning the Commission's weighing of credibility, the Commission may not arbitrarily disregard or ignore

competent, substantial, and undisputed evidence of witnesses. *Id.*

Here, the Commission determined the percentages of permanent partial disability for Claimant's preexisting right knee injury, bilateral carpal tunnel in both wrists, and her psychiatric condition. The Commission determined each injury did not meet the statutory threshold requirement. In making its determination, the Commission stated it found Claimant generally credible as to her injuries and stated it did "not think the extent of the disabilities [rose] to the levels opined by Dr. Stilling or Dr. Levy." Thus, the record is not wholly silent on the issue of credibility. Essentially, the Commission did not believe Dr. Stillings or Dr. Levy's testimony as to the levels of disabilities and did not find their opinions credible. Thus, the Commission was free to disregard Dr. Stillings's and Dr. Levy's disability ratings.

Furthermore, the Commission's rating decisions are supported by competent and substantial evidence. The Commission based its decision on Claimant's testimony regarding the nature of her injuries and the various ways in which the conditions impacted her ability to work. Claimant testified that because of her right knee injury, she was able to bend that leg and she was a little slower with that knee. Claimant also testified that her carpal tunnel syndrome made her slower at her job. With respect to her psychiatric condition, Claimant testified that taking the anti-depressants made her tired a lot faster and her co-workers would try to help her with her job.

However, the Commission further noted there was a lack of substantial medical records concerning the preexisting conditions to her right knee, carpal tunnel syndrome in both wrists, and psychiatric condition. Regarding the right knee, there were a few records for treatment of the right knee. There were a few entries regarding Claimant's bilateral carpal tunnel condition, including references to injections. The records indicate only conservative treatment for her bilateral carpal tunnel condition. There were no preexisting medical records for Claimant's psychiatric condition, except a few references to Claimant suffering from anxiety. After considering all the evidence and determining the ratings of Dr. Levy and Dr. Stillings were not credible, the Commission rated Claimant's preexisting injury to Claimant's right knee, bilateral carpal tunnel syndrome and psychiatric condition and determined the conditions did not meet the Fund threshold. There was competent and substantial evidence to support the Commission's decision with regard to Injury No. 01–165842. Claimant's first point is denied.

■■ In her second point, Claimant argues the Commission erred with regard to Injury No. 02–032561 by finding Claimant's maximum medical improvement date was October 21, 2005 when it should have been March 24, 2005. Claimant also claims the Commission correctly found Claimant was permanently and totally disabled but erred in calculating the timing of the payments due from the Fund.

The Commission found Claimant reached maximum medical improvement on October 21, 2005. The Commission noted Employer would have had responsibility for temporary total disability benefits up until the date of maximum medical improvement on October 21, 2005, but because "Employer settled out their liability by stipulation for compromise settlement, this date is relevant only for purposes of calculating Second Injury Fund liability." The Commission found Employer was responsible for 200 weeks of permanent partial disability from October 22, 2005 until

August 22, 2009. Starting on August 23, 2009, the Fund would pay benefits for the remainder of Claimant's lifetime.

Claimant contends the Commission's decision is erroneous in two ways. First, the Commission's decision precluded payments of permanent partial disability benefits until maximum medical improvement was reached despite the fact that statute does not mention the term maximum medical improvement. Second, the Commission based its decision on Claimant's alleged eligibility for temporary total disability benefits from Employer when Claimant never received temporary total disability benefits from Employer. The issue of courts using the date of maximum medical improvement to determine when permanent partial disability benefits begin when the phrase "maximum medical improvement" is not included in the statute has not been specifically addressed by the court before.

The Missouri workers' compensation statute does not use the phrase "maximum medical improvement." Claimant acknowledges that many cases have used the maximum medical improvement standard to determine the beginning date for permanent disability benefits. *See Soard v. Town & Country Supermarkets*, 193 S.W.3d 446, 449 (Mo.App. S.D.2006); *Lorenz v. Sweetheart Cup Co., Inc.*, 60 S.W.3d 677, 681 (Mo.App. S.D.2001). Claimant contends maximum medical improvement should not be the date permanent partial disability benefits begin, particularly in cases, where as here, the employee did not receive temporary total disability benefits.

Temporary total disability is provided for in Section 287.170. Section 287.170.1 provides, in pertinent part, that "the employer shall pay compensation for not more than four hundred weeks *during the continuance of such disability* at the weekly rate of compensation in effect under this section on the date of the injury for which compensation is being made." (Emphasis added.) The term "total disability" is defined in Section 287.020.6 as the "inability to return to any employment and not merely [the] inability to return to the employment in which the employee was engaged at the time of the accident."

The word "temporary" is not defined by the statute. However, "temporary total disability" is a judicial creation that is defined by case law and not by statute. *Cooper v. Medical Center of Independence*, 955 S.W.2d 570, 575 (Mo.App. W.D.1997), *overruled on other grounds by Hampton*, 121 S.W.3d at 226. The purpose of temporary total disability benefits is to cover the employee's healing period, so the award should cover only the time before the employee can return to work. *Cooper*, 955 S.W.2d at 575; *Seeley v. Anchor Fence Co.*, 96 S.W.3d 809, 821 (Mo.App. S.D.2002), *overruled on other grounds by Hampton*, 121 S.W.3d at 224. Temporary total disability benefits are owed until the employee can find employment or the condition has reached the point of "maximum medical progress." *Cooper*, 955 S.W.2d at 575. Thus, temporary total disability benefits are not intended to encompass disability after the condition has reached the point where further progress is not expected. *Cooper*, 955 S.W.2d at 575; *Smith v. Tiger Coaches, Inc.*, 73 S.W.3d 756, 764 (Mo.App. E.D. 2002), *overruled on other grounds by Hampton*, 121 S.W.3d at 225. This is reflected in the language that temporary total disability lasts only "during the continuance of such disability." Section 287.170.1.

Permanent partial disability is provided for in Section 287.190. Section 287.190.1 provides, in pertinent part:

For permanent partial disability, which shall be in addition to compensation for temporary total disability or temporary partial disability paid in accordance with sections 287.170 and 287.180, respectively, the employer shall pay to the employee compensation computed at the weekly rate of compensation in effect under subsection 5 of this section on the date of the injury for which compensation is being made, which compensation shall be allowed for loss by severance, total loss of use, or proportionate loss of use of one or more of the members mentioned in the schedule of losses.

"Permanent partial disability" is defined as a disability that is permanent in nature and partial in degree. Section 287.190.6(1). Permanent partial disability is not dependent on the employee's inability to work. *Landers*, 963 S.W.2d at 285. "Permanent disability is determined and provided only after temporary disability compensation is discontinued." *Schuster v. State Division of Employment Security*, 972 S.W.2d 377, 381 (Mo.App. E.D.1998).

Claimant's argument that the Commission erred in precluding payment of permanent partial disability benefits until after Claimant reached maximum medical improvement because the statute does not contain the phrase maximum medical improvement is without merit.

Although the statutes involving temporary total disability and permanent disability do not set out a specific time line, there is an intended timing of benefits paid by employers. Temporary total disability benefits are due from the date of the injury through the date the condition has reached the point where further progress is not expected. Courts have used various terms to determine when an employee's condition has reached the point where further progress is not expected, including the term maximum medical improvement. *Vinson v. Curators of the University of Missouri*, 822 S.W.2d 504, 508 (Mo.App. E.D.1991)(interpreting a doctor's testimony of employee's maximum treatment potential to mean maximum medical improvement); *Cooper*, 955 S.W.2d at 575 (using the term maximum medical progress to define the point where no further progress is expected for an employee's condition).

After reaching the point where no further progress is expected, it can be determined whether there is either permanent partial or permanent total disability and benefits may be awarded based on that determination. One cannot determine the level of permanent disability associated with an injury until it reaches a point where it will no longer improve with medical treatment. Furthermore, an employers' liability for permanent partial or permanent total disability does not run concurrently with their liability for temporary total disability.

Although the term maximum medical improvement is not included in the statute, the issue of whether any further medical progress can be reached is essential in determining when a disability becomes permanent and thus, when payments for permanent partial or permanent total disability should be calculated.[2]

---

**2.** Claimant also argues that because Section 287.190 states the computation of the rate of compensation for permanent partial disability is to be calculated based upon the date of injury, the legislature intended for permanent partial disability benefits to begin on the date of injury. Claimant's argument is without merit. The date of injury is used to determine the rate of compensation for permanent partial disability because that date gives a fairer estimate of the claimant's actual wages at the time of the injury. *See* Section 287.190.5(1)-(5).

Claimant's central argument regarding why her permanent partial disability benefits should be calculated from the date of the injury revolves around the fact that she did not receive temporary total disability benefits. Claimant contends that because she never received temporary total disability benefits from Employer, her permanent partial disability should be calculated as of the date of the injury. Claimant contends that under Section 287.170, which provides "the employer shall pay compensation" for temporary total disability, if an employee is eligible for temporary total disability benefits an employer must pay them. Claimant states there is an assumption that because temporary total disability benefits were not paid, she was ineligible to receive the benefits. Thus, because neither statute mentions maximum medical improvement as a prerequisite for receiving payments, Claimant argues permanent partial disability benefits should be paid as of the date of the injury where no temporary total disability was paid.

However, the record is unclear regarding temporary total disability benefits. The stipulation for compromise settlement between Claimant and Employer was not entered into evidence. The Commission's decision states that as to temporary total disability, Claimant settled the issue as "disputed" with Employer. Moreover, whether or not temporary total disability benefits were accounted for in the settlement, permanent partial or permanent total disability benefits are to be paid only after the healing period and the extent of the disability can be ascertained.

The Commission did not err in using the date of maximum medical improvement to calculate permanent partial disability benefits.

We next address Claimant's argument that the date of maximum medical improvement should have been March 24, 2005 instead of October 21, 2005. The Commission noted none of Claimant's treating doctors' records were placed in evidence, and that Claimant offered no other direct evidence of when she was at maximum medical improvement following her third back surgery. The Commission therefore found Dr. Levy's October 21, 2005 report based on his physical examination of Claimant established the date Claimant reached maximum medical improvement.

The claimant in a workers' compensation proceeding has the burden of proving all elements of the claim to a reasonable probability. *Cooper*, 955 S.W.2d at 574–75. Here, the Commission utilized the date of Claimant's rating physician's report to establish Claimant's date of maximum medical improvement. Based on the evidence in the record, this is neither arbitrary nor capricious. Moreover, Claimant's claim that she reached maximum medical improvement on March 24, 2005, three days after her third surgery is not supported by any medical evidence and does not take into account recovery time.

The Commission did not err in finding Claimant's date of maximum medical improvement was October 21, 2005. Furthermore, the Commission did not err in calculating permanent partial disability benefits from that date and finding Employer responsible for 200 weeks of permanent partial disability from October 22, 2005 until August 22, 2009 and that the Fund's liability for permanent total disability begins August 23, 2009 with regard to Injury No. 02–032561. Claimant's second point is denied.

The Commission's decision with regard to both Injury No. 01–165842 and Injury No. 02–032561 is affirmed.

2

KATHIANNE KNAUP CRANE, P.J., and KENNETH M. ROMINES, J., concur.