

# In the Missouri Court of Appeals

# Eastern District

## DIVISION III

| | | |
|---|---|---|
| CARL GREER, | ) | No. ED101389 |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | Appeal from the Labor and |
| | ) | Industrial Relations Commission |
| SYSCO FOOD SERVICES, | ) | |
| | ) | |
| Respondent/Cross Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TREASURER OF MISSOURI AS | ) | |
| CUSTODIAN OF THE SECOND | ) | |
| INJURY FUND, | ) | |
| | ) | FILED:  November 18, 2014 |
| Respondent. | ) | |

### Introduction

Carl Greer ("Claimant") appeals from the final award of the Labor and Industrial

Relations Commission ("Commission") allowing Claimant compensation for past medical

expenses, future medical care benefits, permanent partial disability ("PPD") benefits, and

temporary total disability ("TTD") benefits from SYSCO Food Services ("Employer"), but

denying Claimant  permanent total disability ("PTD") benefits.  Claimant asserts the

Commission erred in failing to award him PTD benefits because the evidence established he is

unemployable in the open labor market. Employer cross-appeals from the award, arguing that the Commission erred in awarding Claimant past medical expenses, future medical care benefits, and TTD benefits, and in failing to reduce Claimant's benefits by 25-50% due to Claimant's violation of Employer's reasonable safety rule. Because the Commission misapplied the law when awarding Greer TTD benefits, we reverse that portion of the Commission's award. Because the record contains sufficient competent evidence to support the Commission's award in all other respects, we affirm the remainder of the award.

Factual History

Claimant was injured while working for Employer as a forklift operator. The accident occurred on February 23, 2006, when Claimant was trying to scan a pallet while standing on a forklift in Employer's warehouse. As Claimant leaned forward to scan the pallet, his left leg extended outside the running lines of the forklift. At that point, a co-employee was driving another forklift, which grabbed Claimant's left foot and crushed it between the two forklifts. Claimant was taken by ambulance to the hospital where he was placed in a cast.

Five days after the accident, Claimant saw Dr. Blair who diagnosed a crush injury to Claimant's left ankle. Dr. Blair ordered two MRIs; the first revealed moderate to severe posterior tibial tendonitis and some scar tissue, and the second was essentially normal. Claimant's condition improved over the next few months. On August 17, 2006, Claimant participated in a functional capacity evaluation, which showed he could work at the heavy demand level. Claimant then returned to work for several months. On October 24, 2006, Claimant underwent another functional capacity evaluation, which showed he could work at the medium demand level.

On February 5, 2007, Dr. Blair noted some tenderness over Claimant's tarsal tunnel and sent him for an EMG and nerve conduction test to rule out tarsal tunnel syndrome. Claimant

2

could not complete the nerve conduction test. Dr. Blair opined that the EMG appeared normal, and he released Claimant to full duty on March 19, 2007. Claimant last saw Dr. Blair on April 23, 2007, at which point Dr. Blair released Claimant at maximum medical improvement and opined that Claimant suffered a 5% permanent partial disability of his left ankle associated with pain and somewhat limited range of motion.

Claimant voluntarily resigned from his job with Employer on November 7, 2007, due to pain in his left foot and ankle. When Claimant continued to experience pain he sought treatment on his own from pain management specialist Dr. John Graham. On November 28, 2007, Dr. Graham examined Claimant and administered a psychological test. The results of the test led Dr. Graham to conclude that Claimant has a strong likelihood of functional overlay. Dr. Graham explained that patients with functional overlay often have subjective complaints that are disproportionate to objective findings and that are resistant to treatment. Dr. Graham concluded that he had no treatment to offer Claimant from a pain management standpoint and did not recommend surgery or any other invasive treatment.

On December 4, 2009, Claimant consulted with Dr. Jeffrey Johnson, an orthopedic surgeon, about the pain in his left foot and ankle. Dr. Johnson diagnosed Claimant with a fixed deformity in his left foot, which caused his foot to turn inward, and opined that Claimant could have tarsal tunnel syndrome and an intraneural tibial injury. On June 22, 2010, Dr. Johnson and Dr. Mackinnon, a plastic surgeon, performed a tarsal tunnel release, tendon lengthening, removal of cutaneous neuromas, and internal neurolysis for the purpose of reducing Claimant's pain and correcting his deformity. Dr. Johnson last examined Claimant on December 12, 2011, and reported that although Claimant's pain was somewhat improved, his foot had contracted to an inward position.

Dr. Berkin, a family practitioner, examined Claimant on August 8, 2007, January 22, 2009, and April 30, 2011. Dr. Berkin also reviewed Claimant's medical records and obtained a medical history from Claimant. Dr. Berkin diagnosed Claimant with tarsal tunnel syndrome and placed restrictions on Claimant to avoid excessive squatting, kneeling, stooping, turning, lifting, climbing, and standing on his feet longer than twenty to thirty minutes at a time. Dr. Berkin later testified that his restrictions were based on a combination of Claimant's 2006 foot injury and prior neck, back, shoulder, and toe injuries. Dr. Berkin opined that Claimant is permanently and totally disabled due to all of these injuries. Dr. Berkin further opined that Claimant did not have a good result from his surgery with Drs. Johnson and Mackinnon, Claimant's functioning was not improved by the surgery, and Claimant's condition worsened after the surgery.

Claimant testified that he suffers pain in his left foot on a daily basis, and that he cannot stand or sit for long periods of time because of the pain. Claimant further testified that any activity involving his left foot causes his foot to swell, and that he does not think he can work a physical forty-hour week job because of his foot. Prior to the 2006 foot injury, Claimant sustained several injuries to his neck, back, and shoulder that were a hindrance and obstacle to performing his job.

Procedural History

Claimant filed a claim for workers' compensation benefits against Employer and the Second Injury Fund ("Fund") on December 4, 2006, and an amended claim on March 4, 2013. The matter was heard before an ALJ on May 7, 2013. After the hearing the ALJ rendered the following findings and conclusions relevant to this appeal: (1) Claimant is entitled to $49,475.14 in past medical expenses; (2) Claimant is entitled to future medical care furnished by Employer; (3) Claimant is not entitled to any additional TTD benefits; (4) Claimant sustained a 27.5% permanent partial disability of his left foot as a result of the 2006 work accident; (5) the Fund is

4

liable for 40.6275 weeks of PPD benefits; and (6) Employer is entitled to a 25% reduction in all benefits awarded to Claimant from Employer pursuant to Section 287.120.5[1] because Claimant's injury was caused by his failure to obey Employer's reasonable safety rule.

Both Claimant and Employer applied to the Commission for review of the ALJ's award. The Commission modified the award on the issues of TTD benefits, past medical expenses,[2] and the reduction of benefits under Section 287.120.5. The Commission determined that Claimant was entitled to additional TTD benefits from the date of his surgery on June 22, 2010, to the date Dr. Johnson released him on February 4, 2011. The Commission also found that Employer was not entitled to a reduction in Claimant's benefits for violation of its safety rule because Claimant had no actual knowledge of the rule at the time of the accident. The Commission affirmed the award of the ALJ and adopted its findings and conclusions in all other respects. Claimant now appeals from the final award of the Commission, and Employer cross-appeals.

Points on Appeal

In his sole point on appeal, Claimant asserts that the ALJ's denial of PTD benefits is contrary to the substantial and competent evidence presented at the hearing. Claimant argues that the medical records, expert opinions, and Claimant's testimony prove he is entitled to PTD benefits due to his inability to obtain or maintain employment in the open labor market.

Employer presents four points in its cross-appeal. First, Employer asserts that the Commission erred in awarding Claimant additional TTD benefits because there is not sufficient competent evidence to support an award of TTD benefits after Claimant reached maximum medical improvement on April 23, 2007. Second, Employer argues that the Commission erred in awarding Claimant past medical expenses because the record lacks sufficient competent evidence to prove Claimant's medical treatment after April 23, 2007, was reasonably necessary

---

[1] All statutory references are to RSMo 2000.
[2] The Commission awarded an additional $1,500.04 in past medical expenses, which is not at issue on appeal.

5

to cure and relieve him from the effects of his work injury. Third, Employer alleges that the Commission erred in awarding Claimant future medical expense benefits because there is not sufficient competent evidence in the record to establish that future medical treatment is reasonably required to cure or relieve the effects of Claimant's work injury. Last, Employer asserts that the Commission erred in failing to reduce Claimant's benefits under Section 287.120.5 because Employer produced overwhelming evidence to prove Claimant's injury was the result of his violation of Employer's reasonable safety rule.

Standard of Review

On appeal from a final award of the Commission in a workers' compensation proceeding, this Court may modify, reverse, remand for rehearing, or set aside the award upon finding that: (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award. Section 287.495.1. We must consider the whole record to determine whether it contains sufficient, competent, and substantial evidence to support the award, and we will set aside the award only if it is contrary to the overwhelming weight of the evidence. Hampton v. Big Boy Steel Erection, 121 S.W.3d 220, 222-23 (Mo. banc 2003). We defer to the Commission on issues of fact, credibility of witnesses, and weight to be given conflicting evidence. Maness v. City of De Soto, 421 S.W.3d 532, 537 (Mo. App. E.D. 2014). "When the evidence before the Commission could warrant either of two opposing findings, this court is bound by the Commission's finding, and it is irrelevant that the record contains evidence supporting a contrary conclusion." Id. However, we are not bound by the Commission's interpretation and application of the law, and no deference is afforded to the Commission's interpretation of the law. Schoemehl v. Treasurer of State of Mo., 217 S.W.3d 900, 901 (Mo. banc 2007).

6

## I. Claimant's Appeal - Permanent Total Disability

In his sole point on appeal, Claimant asserts that the Commission erred in failing to award him PTD benefits because the competent and substantial evidence in the record proves that Claimant is unemployable in the open labor market. Claimant directs this Court to his own testimony that he cannot sit or stand for long periods of time, that he is physically and mentally unable to work forty hours per week, and that he has a limited walking ability requiring him to rest and elevate his leg during the day. Claimant also points to the testimony of Mr. Stephen Dolan, a vocational expert, who testified that Claimant is unable to perform any employment for which a reasonably stable market exists. Claimant argues that this Court should find Mr. Dolan's testimony more credible than that of Mr. Terry Cordray, the Fund's vocational expert. Mr. Cordray opined that Claimant is capable of performing numerous unskilled jobs that are sedentary, do not require heavy lifting, and are available in significant numbers in the St. Louis labor market.

The test for permanent, total disability is the claimant's ability to compete in the open labor market. ABB Power T & D Co. v. Kempker, 236 S.W.3d 43, 48 (Mo. App. W.D. 2007). The critical question is whether, in the ordinary course of business, any employer reasonably would be expected to hire the injured worker in his present physical condition. Id.

The Commission concluded that, based upon the entire record, Claimant is not permanently and totally disabled. The Commission noted that Claimant's argument regarding his permanent total disability "is based on Claimant's subjective complaints and limitations that are not well documented in the record apart from the Claimant's testimony." The Commission found that although Claimant testified he needs to lie down and elevate his leg throughout the day, no medical care provider has imposed that restriction. Moreover, although Claimant

testified he needed a cane to move around and for balance, surveillance video showed that he was able to stand and walk around for periods of time without a cane or any other assistance. The Commission concluded, "Clearly, the claimant is physically capable of doing more than what he testified to at the hearing," and his "subjective complaints should be viewed as suspect, reflecting poorly on the claimant's credibility."

Mr. Dolan opined that Claimant is not employable in the labor market. However, because much of Mr. Dolan's opinion was premised on Claimant's subjective complaints, the Commission instead chose to rely upon the opinions of Mr. Cordray. Mr. Cordray testified that even given the physical restrictions placed on Claimant by Dr. Berkin, Claimant would be employable and placeable in jobs such as a cashier at a parking garage, a surveillance system monitor at large office buildings, hospitals, and department stores, a collections clerk, and a telemarketer. Claimant asks this Court to disregard the credibility determination made by the Commission. This we will not do. We defer to the Commission on issues involving the credibility of witnesses and weight to be given to conflicting evidence. Pennewell v. Hannibal Reg'l Hosp., 390 S.W.3d 919, 923 (Mo. App. E.D. 2013). The Commission is free to choose between two opposing experts, and such choices will not be disturbed on appeal. Flack v. St. John's Mercy Med. Ctr., 413 S.W.3d 18, 20 (Mo. App. E.D. 2013). Here, the Commission was free to accept the conclusions of Mr. Cordray and to reject the opinions of Mr. Dolan. The opinions of Mr. Cordray constitute competent and substantial evidence supporting the Commission's determination that Claimant is not permanently and totally disabled. Claimant's point is denied.

## II.    Employer's Cross-Appeal

### A.    Temporary Total Disability

Employer' first point on cross-appeal challenges the Commission's award of additional TTD benefits for the period of time during which Claimant was recovering from his June 22, 2010 surgery. Employer argues that the Commission ignored established Missouri precedent that limits an award of TTD benefits from the date of the injury until the claimant can find employment or the condition has reached the point of maximum medical improvement. Applying this rule, Employer asserts that Claimant was not entitled to any TTD benefits after April 23, 2007, the date on which the ALJ found Claimant reached maximum medical improvement. We agree.

An award of TTD benefits is governed by Section 287.170. That section provides, in pertinent part, that "the employer shall pay compensation for not more than four hundred weeks *during the continuance of such disability* at the weekly rate of compensation in effect under this section on the date of the injury for which compensation is being made." Section 287.170.1 (emphasis added). The term "total disability" is defined as the "inability to return to any employment and not merely [the] inability to return to the employment in which the employee was engaged at the time of the accident." Section 287.020.6. In Cardwell v. Treasurer, this Court explained:

> The purpose of temporary total disability benefits is to cover the employee's healing period, so the award should cover only the time before the employee can return to work. Temporary total disability benefits are owed until the employee can find employment or the condition has reached the point of "maximum medical progress." Thus, temporary total disability benefits are not intended to encompass disability after the condition has reached the point where further progress is not expected. This is reflected in the language that temporary total disability lasts only "during the continuance of such disability." Section 287.170.1.

9

Cardwell v. Treasurer of State of Mo., 249 S.W.3d 902, 909 (Mo. App. E.D. 2008) (internal citations omitted).

Here, the ALJ found that "the evidence is overwhelming that [Claimant] achieved maximum medical improvement as of April 23, 2007." Notably, the Commission did not disturb this factual finding on review. Nor does the record include any finding by the Commission that Claimant was not at maximum medical improvement when he chose to undergo surgery on June 22, 2010. Nonetheless, the Commission awarded Claimant additional TTD benefits from the date of his surgery on June 22, 2010, through the date of his release by Dr. Johnson on February 4, 2011. In making this award, the Commission reasoned that because the phrase "maximum medical improvement" is not found in Chapter 287, an award of TTD benefits to cover Claimant's healing period following the surgery was not precluded by the statute. The additional TTD award totaled $18,913.32.

The Commission's award of additional TTD benefits is premised upon its interpretation of Section 287.170, which does not contain the phrase "maximum medical improvement". The Commission's reliance on the absence of the phrase "maximum medical improvement" in Chapter 287 as the basis for allowing an award TTD benefits after a clamant has reached and maintained maximum medical improvement is an erroneous application of the law. The concept of temporary total disability is a judicial creation defined by case law and not by statute. Cardwell, 249 S.W.3d at 909. Missouri courts have consistently held that TTD benefits are due from the date of the employee's injury through the date the condition has reached the point where further progress is not expected. Jones v. Washington Univ., 239 S.W.3d 659, 666 (Mo. App. E.D. 2007); Boyles v. USA Rebar Placement, Inc., 26 S.W.3d 418, 424 (Mo. App. W.D. 2000); Stevens v. Citizens Mem'l Healthcare Found., 244 S.W.3d 234, 238 (Mo. App. S.D. 2008). "Maximum medical improvement" is one of various well-recognized terms courts use to

10

determine when an employee's condition has reached the point where further progress is not expected. Cardwell, 249 S.W.3d at 909.

Where a workers' compensation award results from an erroneous application or interpretation of the law, it is subject to correction and reversal by this Court. Booth v. Trailiner Corp., 21 S.W.3d 869, 875 (Mo. App. S.D. 2000). We find that correction and reversal is warranted in this case. The Commission misinterpreted and misapplied the law when it awarded additional TTD benefits to Claimant after he reached maximum medical improvement. The Commission did not disturb the ALJ's finding that Claimant reached maximum medical improvement on April 23, 2007, nor does the record before us contain any finding by the Commission that Claimant did not continue at maximum medical improvement after April 23, 2007. In its award of additional TTD benefits the Commission erroneously applies the clear Missouri case law discussed above. Given the record before us, we hold that Claimant was not entitled to any additional TTD benefits after he reached maximum medical improvement on April 23, 2007. Accordingly, we reverse the Commission's award of $18,913.32 in additional TTD benefits.

### B. Past Medical Expenses

In its second point on cross-appeal, Employer challenges the Commission's award of past medical expenses related to Claimant's June 22, 2010 surgery. Employer argues that there is not sufficient competent evidence in the record establishing that the surgery was reasonably necessary to cure and relieve Claimant from the effects of his work injury. To the contrary, Employer asserts that the evidence proves Claimant's June 22, 2010 surgery and related care were not necessary and actually made Claimant's condition worse.

Compensation for past medical expenses is provided for in Section 287.140.1. That section provides, in pertinent part: "in addition to all other compensation paid to the employee,

11

the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance and medicines, as may reasonably be required after the injury or disability, to cure and relieve the effects of the injury." Such care includes treatment that gives comfort or relief from pain, even though a cure is not possible. Martin v. Town & Country Supermarkets, 220 S.W.3d 836, 844 (Mo. App. S.D. 2007). Where a claimant submits medical bills and identifies the bills as related to and the product of a compensable workplace injury, such evidence provides a sufficient factual basis for the Commission to award compensation for past medical expenses. Abt v. Mississippi Lime Co., 420 S.W.3d 689, 703 (Mo. App. E.D. 2014).

Employer challenges the award on the grounds that Claimant did not prove that the June 22, 2010 surgery and its related care were medically necessary, but does not cite any authority for the proposition that a claimant must produce specific evidence of necessity. We find no such authority and will not disturb the Commission's award unless it is not supported by competent and substantial evidence. Claimant submitted the medical bills and records from his various medical providers who treated him for his 2006 foot injury, including bills and records related to his June 22, 2010 surgery. Claimant also testified that the bills were incurred for treatment of his left foot and ankle, and that such treatment directly flowed from his 2006 work injury. Thus, a sufficient factual basis exists to support the Commission's award of past medical expenses. See Abt, 420 S.W.3d at 689. Employer's second point is denied.

C.     Future Medical Benefits

Employer next challenges the Commission's award of future medical expense benefits on the ground that there is not sufficient competent evidence in the record to support the award. Employer contends that the overwhelming weight of medical authority shows that Claimant was not in need of any medical treatment once he reached maximum medical improvement on April

12

23, 2007. Employer maintains that the only evidence in the record supporting the award of future medical expenses is Dr. Berkin's recommendation that Claimant use non-steroidal anti-inflammatories and analgesics. But, Employer argues, Dr. Berkin's opinion alone is insufficient to support an award of future medical expenses because Dr. Berkin conceded that his recommendation was a "supportive measure" that would not improve Claimant's condition in any way. We are not persuaded.

To be entitled to future medical expense benefits, a claimant need not show "conclusive evidence" of a need for future medical treatment. Stevens, 244 S.W.3d at 237. Nor is a claimant required to show evidence of the specific nature of the treatment needed. Id. Instead, a claimant need only demonstrate a "reasonable probability" that future medical treatment is needed by reason of his work-related injury. Fitzwater v. Dep't of Pub. Safety, 198 S.W.3d 623, 628 (Mo. App. W.D. 2006). Important to this case, future care to relieve a claimant's pain should not be denied simply because he may have achieved maximum medical improvement. Poole v. City of St. Louis, 328 S.W.3d 277, 292 (Mo. App. E.D. 2010).

Here, Dr. Berkin recommended that Claimant use nonsteroidal anti-inflammatory medication and analgesics for control of his left foot and ankle pain. The fact that this pain relief treatment will not ultimately improve Claimant's medical condition does not justify a denial of future medical benefits. See id. The statute allows for treatment that gives comfort or relief even though a cure is beyond avail. Id. Although Dr. Berkin's opinion alone demonstrates a "reasonable probability" that future medical treatment is needed as a result of Claimant's work-related injury, we note that Dr. Johnson also recommended future treatment including pain management and a possible tendon transfer. The opinions of Dr. Berkin and Dr. Johnson constitute sufficient and competent evidence to support the Commission's award of future medical expense benefits. Therefore, Employer's third point is denied.

13

D.      **Safety Penalty**

In its final point, Employer argues that the Commission erred in failing to reduce

Claimant's benefits under Section 287.120.5 because Employer produced overwhelming

evidence to prove Claimant's injury was the result of his violation of Employer's reasonable

safety rule.

Section 287.120.5 allows the Commission to reduce a workers' compensation award if

the claimant's work injury was caused by his or her failure to obey a reasonable work safety rule.

Section 287.120.5.  To be entitled to the reduction, the burden is on the employer to establish the

following elements:

> 1. that the employer adopted a reasonable rule for the safety of employees;
> 2. that the injury was caused by the failure of the employee to obey the safety rule;
> 3. that the employee had actual knowledge of the rule; and
> 4. that prior to the injury the employer had made a reasonable effort to cause his or her employees to obey the safety rule.

Carver v. Delta Innovative Servs., 379 S.W.3d 865, 869 (Mo. App. W.D. 2012).

At the hearing before the ALJ, Employer introduced its SYSCO*Safe* Preferred Work

Methods and specifically pointed to rule number three under the heading "Traveling."  Rule

number three under "Traveling" reads: "[k]eep all body parts inside the running lines of the

equipment."  Employer also presented the testimony of Claimant's supervisor, Mr. Flakes, who

testified that Claimant violated rule number three under "Traveling" when he extended his leg

beyond the running lines of the forklift.  Mr. Flakes stated that Claimant would not have injured

his left foot if he had kept his left leg and foot within the running lines of the forklift.  Mr. Flakes

also testified that the SYSCO*Safe* Preferred Work Methods were discussed at daily safety

meetings; that employees were monitored daily for compliance through hazardous work

assessments; and that Employer issued coaching cards to employees who violated the safety

rules.

14

Claimant testified that he was aware of the rule requiring him to keep all body parts inside the running lines of his forklift, but he believed this rule only applied when the forklift was in motion, and at time of the accident, Claimant's forklift was stationary. Claimant explained that he interpreted the rule this way because the rule is located under the heading "Traveling." The Commission found Claimant's interpretation of the rule reasonable and his testimony credible. As a result, the Commission concluded that Claimant had no actual knowledge of Employer's safety rule. Because Claimant's actual knowledge of the safety rule is a necessary element under Section 287.120.5, the Commission found that Employer was not entitled to a reduction under the statute.

Pursuant to our standard of review, we must defer to the Commission's credibility and factual determinations. Maness, 421 S.W.3d at 537. The Commission found as a matter of fact that Claimant did not have actual knowledge of Employer's safety rule. The Commission relied upon sufficient, competent, and substantial evidence in reaching this finding, and the finding is not contrary to the overwhelming weight of the evidence. Accordingly, Employer's fourth point is denied.

## Conclusion

Because the Commission's award of TTD benefits was the result of its misapplication of the law, we reverse the award of TTD benefits. We affirm the decision of the Commission in all other respects.

_Kurt S. Odenwald_
Kurt S. Odenwald, Presiding Judge

Robert G. Dowd, Jr., J., Concurs
Gary M. Gaertner, Jr., J., Concurs

15