In the Missouri Court of Appeals
 Eastern District
 DIVISION FOUR

JIMMY FIELDS, ) No. ED109251
 )
 Appellant, ) Appeal from the Labor and
 ) Industrial Relations Commission
vs. )
 )
TREASURER OF MISSOURI AS )
CUSTODIAN OF THE SECOND INJURY )
FUND, )
 )
 Respondent. ) FILED: July 20, 2021

 In this consolidated appeal, Jimmy Fields (“Claimant”) challenges the final awards of the

Labor and Industrial Relations Commission (the “Commission”) denying his claims for workers’

compensation benefits from the Second Injury Fund (the “Fund”). Claimant argues the

Commission erred in denying permanent total disability (“PTD”) benefits for his hearing loss

claim, denying permanent partial disability (“PPD”) benefits for back injury claims, and

alternatively, denying PTD benefits for his last back injury claim. We find the Commission’s

awards denying PPD for Claimant’s back injuries and also denying PTD for Claimant’s last back

injury are supported by sufficient competent evidence. We also conclude, however, the

Commission’s award denying PTD for Claimant’s hearing loss is not supported by sufficient

competent evidence. We therefore reverse and remand with instructions for the Commission to

enter an award of PTD based on Claimant’s hearing loss consistent with the findings in this

opinion.
 Factual and Procedural Background

 Claimant worked as a ramp agent for Southwest Airlines (“Employer”) from 1995 to

November 9, 2012. His job entailed handling baggage and freight that weighed up to 100 pounds

and also involved a significant amount of pushing, pulling, twisting, bending and lifting. Claimant

testified he handled approximately 200 bags or pieces of freight per plane and was responsible for

nine planes during each eight-hour shift.

 Claimant testified he had poor grades in school and was placed in remedial classes. He

stated he has trouble reading and he was diagnosed with severe dyslexia around 1974. He also

testified that he does not know how to use a computer and he only performed manual labor at the

jobs he had before he began working for Employer.

 With regard to his injuries, Claimant testified he was lifting a bag from a carousel on

August 17, 2011, when he felt pain in his low back and left leg. He also stated that he later hurt

his low back while twisting and lifting a 95-pound golf bag and container on May 17, 2012, and

that this incident worsened the low back symptoms from his injury on August 17, 2011. Claimant

also related that he hurt his low back at work on June 29, 2012, when he pulled a bag and that his

low back pain and right leg symptoms worsened from what he had previously experienced with

his low back injury on May 17, 2012.

 Claimant also described another back injury he suffered on November 9, 2012, when he

was working inside the belly of a plane handling baggage. On that day, Claimant pulled a bag and

immediately felt pain in his low back. He had only been working for two hours that day when the

injury occurred and had been off work for four months since his previous back injury in June 2012.

Claimant explained this injury worsened his low back symptoms and increased the pain and

 2
numbness in his right leg. He continued to experience these symptoms for the duration of his

employment with Employer and up to the time of the hearing.

 Claimant also testified his work environment was noisy throughout the entirety of his

employment. The noise was caused by airplanes, baggage hitting the side of the carousel, conveyor

belts and various other equipment. Employer did not require Claimant to wear hearing protection

except on the tarmac and he occasionally did so. He first began noticing problems with his hearing

during the last few years of his employment with Employer.

 Claimant also described other injuries and conditions he sustained that continue to affect

his ability to work. He testified he hurt his right shoulder when he pulled and lifted a bag on March

4, 2009 and that a bag struck and injured his right thigh on December 1, 2010. Additionally, on

June 30, 2008, he went to the hospital after an auto accident and was diagnosed with a fracture of

the C7 vertebrae. That same year, he was diagnosed with depression and anxiety by his primary

care physician, Dr. David Bean.

 After his November 2012 back injury, Claimant stopped working for Employer. He

explained he did not seek other employment because he believed no one would hire him. He

testified he could not perform a full-time job stocking shelves because it would require him to

bend over, reach up, pick up heavy objects, stand for significant periods of time and be able to hear

people. He added he would have difficulty with any job that had co-workers or customers due to

his problems hearing and understanding conversations and because his depression and anxiety

would make it difficult to deal with others.

 Claimant filed and resolved five PPD claims against Employer. The stipulation for

compromise settlement included the injury to his right thigh from December 1, 2010 (1% of right

hip) and the back injuries he suffered on August 17, 2011 (3.5% of the low back), May 17, 2012

 3
(3.5% of the low back), June 29, 2012 (3.5% of the low back), and November 9, 2012 (4.5% of

the low back). Claimant and Employer also settled a claim for bilateral hearing loss from noise

exposure (10.25% at the 180-week level).

 Claimant proceeded with his claims against the Fund with the exception of his claim

relating to his thigh injury, which he dismissed. On December 6, 2018, an administrative law

judge (“ALJ”) held a hearing regarding Claimant’s PPD claims for his back injuries from August

2011, May 2012, and June 2012, his PPD, or alternatively PTD, for his back injury from November

2012, and his PTD claim for his hearing loss. The ALJ considered Claimant’s testimony along

with expert testimony, depositions, reports and medical records.

 Claimant retained Dr. Robert Margolis, a neurologist, who examined him and reviewed his

medical records. Dr. Margolis opined that Claimant’s back injuries from August 2011, May 2012,

June 2012 and November 2012 were the prevailing factors “causing his resulting medical condition

and disability regarding his back pain and radiculopathy.” He rated Claimant as having a 25%

PPD to the body as a whole and apportioned that rating equally over the four back injuries, which

resulted in a PPD rating of 6.25% for each back injury. Dr. Margolis admitted his apportionment

was a “guess” and that he assigned an equal percentage to each injury because Claimant “couldn’t

apportion his current back condition to how it worsened with each injury.” He also concluded

Claimant is totally and completely disabled from all forms of employment but deferred to a

vocational rehabilitation expert. Dr. Margolis noted in his report that Claimant had hearing loss

but deferred to a specialist regarding a disability rating for that condition.

 Dr. Margolis testified:

 Q: [D]id you believe that these preexisting conditions and injuries combined with
 [Claimant’s] work-related injuries and hearing loss to create a greater overall
 disability?

 4
 A: Yes.

 Q: [I]n your opinion, do all of his conditions, both the preexisting conditions of his
 neck, left wrist, right shoulder . . . and his work-related injuries to his back and the
 radiculopathy and the hearing loss, do all of those conditions constitute a hindrance
 or obstacle to obtaining and maintaining employment?

 A: Yes.

 Q: [D]o you have an opinion as to whether [Claimant] is able to maintain – or obtain
 and maintain employment?

 ....

 A: I do not believe that he is.

 Q: And why is that?

 A: Sixty-four year old guy when I saw him and he’s got a lot of disability, he
 does a very physical job.

 Q: [D]o you believe [Claimant] will require future medical treatment for his back
 as a result of his work-related injuries?

 A: Yes.

 Q: . . . . How does the combined effect of the injuries and conditions of [Claimant’s]
 back, his radiculopathy, his right leg, his right shoulder, his left wrist, his neck, and
 the hearing loss result in him being totally and permanently disabled from
 employment?

 A: Well, I think the disability in regard to the hearing loss, I think that’s the least
 of the players here in terms of his being totally disabled from employment, unless
 he’s in a job that requires hearing, significant hearing.

 Claimant also retained Vincent Stock, a vocational counselor, who opined that Claimant is

permanently totally disabled from a vocational perspective. Specifically, Mr. Stock testified:

 Q: [W]hat is the combined effect, from an employment perspective, of a person
 who has disabilities of his back, neck, right shoulder, left wrist, radiculopathy of
 his legs, a bilateral hearing loss, sleep deprivation, advanced age, limited education
 and no transferable skills?

 A: He’s unemployable.

 5
 Q: Okay. And how does a bilateral hearing loss affect [Claimant’s] ability to work
 in certain jobs?

 A: Well, if he can’t hear, he’s going to misconstrue what’s being said, and then
 misinterpret it. It really hampers his ability to communicate.

 Dr. Russell Cantrell, a physiatrist, examined Claimant and reviewed his medical records at

Employer’s request. He opined that Claimant sustained no permanent disability attributable to his

August 2011, June 2012 and November 2012 back injuries but concluded he sustained a 3% PPD

to the body as a whole due to a lumbar strain superimposed on degenerative disc disease as a result

of his May 2012 back injury. He also found Claimant has a 5% PPD that is attributable to

degenerative changes in his lumbar spine and is unrelated to any of his work injuries. Dr. Cantrell

did not provide an opinion regarding Claimant’s hearing loss.

 Dr. Cantrell’s opinion with regard to Claimant’s August 2011 back injury was based on a

medical clinic’s office note dated August 31, 2011, indicating Claimant stated he was “feeling

great,” “had experienced a 90% improvement,” and no longer required medications. As to

Claimant’s June 2012 injury, Dr. Cantrell stressed that a report from an appointment two weeks

before that injury indicated that Claimant said he was still experiencing complications from his

May 2012 injury. Dr. Cantrell also noted that Claimant told a physician in August 2012 that his

injury was from May 2012. Ultimately, Dr. Cantrell concluded Claimant’s symptomology was

from the May 2012 back injury and Claimant was not permanently disabled as a result of his

November 2012 back injury because he acknowledged his complaints were attributable to his prior

injuries.

 In October 2014, Dr. Sheldon Davis, an otolaryngologist, tested Claimant’s hearing at the

request of his attorney. The testing revealed mild to moderate bilateral sensory neural hearing loss

in the lower frequencies, progressing to a severe bilateral sensory neural hearing loss in the higher

 6
frequencies. Dr. Davis opined that Claimant’s noise exposure at Employer was the prevailing

cause of his bilateral sensory neural hearing loss. He assigned a 12.8% PPD rating of the body as

a whole to Claimant’s hearing loss and recommended hearing aids for both ears. On February 4,

2015, another otolaryngologist, Dr. Anthony Mikulec, evaluated Claimant’s hearing at the request

of Employer and assigned a 9% rating to Claimant’s binaural impairment.

 The ALJ ultimately denied compensation for Claimant’s four PPD claims relating to his

back injuries and also denied compensation for both of his PTD claims. Claimant appealed to the

Commission, which denied Claimant’s PPD claims for his August 2011, June 2012 and November

2012 back injuries, and his alternative PTD claim for his November 2012 back injury. The

Commission, however, reversed the ALJ’s award as to Claimant’s May 2012 back injury and

awarded PPD benefits. The Commission also denied PTD benefits for Claimant’s hearing loss

claim.

 Regarding Claimant’s back injuries, the Commission found that Claimant failed to prove

that the injuries of August 2011, June 2012 and November 2012 resulted in a permanent disability.

The Commission concluded Dr. Margolis’s opinions regarding the disability ratings of Claimant’s

back injuries—which Dr. Margolis acknowledged were a “guess”—were not persuasive. The

Commission also noted Dr. Cantrell’s opinion that there was “no permanent disability referable to

the back with regard to the back injuries, with the exception of the May 17, 2012 injury.”

 With regard to Claimant’s PTD claim for hearing loss, the Commission found the ALJ’s

denial of compensation from the Fund was supported by competent and substantial evidence. It

affirmed the ALJ’s award with a supplemental opinion. The Commission found that nothing in

the records of Claimant’s primary care physician, Dr. Bean, suggested hearing loss prevented

Claimant from performing his job duties. The Commission also noted that Claimant’s vocational

 7
rehabilitation expert, Mr. Stock, opined that Claimant was permanently and totally disabled

primarily based on physical limitations and complaints of constant pain. The Commission

indicated it was not persuaded that the combination of Claimant’s hearing loss and his preexisting

injuries resulted in PTD. It reasoned that “if [Claimant] is permanently and totally disabled, it is

based on his prior physical injuries, pain, and physical limitations, without consideration of the

hearing loss.”

 Claimant now challenges the Commission’s denial of PPD benefits for his August 2011,

June 2012 and November 2012 back injuries, its denial of PTD benefits for his hearing loss and,

in the alternative, the denial of PTD benefits for his November 2012 back injury.

 Standard of Review

 We review “all final decisions, findings, rules, and orders of the Commission to determine

‘whether [they] are supported by competent and substantial evidence upon the whole record.’”

Annayeva v. SAB of TSD of City of St. Louis, 597 S.W.3d 196, 198 (Mo. banc 2020) (quoting MO.

CONST. art. V, sec. 18). We will affirm the Commission’s decision unless: “(1) the Commission

acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found

by the Commission do not support the award; or (4) there was not sufficient competent evidence

in the record to warrant the making of the award.” White v. ConAgra Packaged Foods, LLC, 535

S.W.3d 336, 338 (Mo. banc 2017).

 “Upon appeal no additional evidence shall be heard and, in the absence of fraud, the

findings of fact made by the [C]ommission within its powers shall be conclusive and binding.”

Section 287.495.1.1 We defer to the Commission’s determinations as to the credibility of the

witnesses and the weight to be given to conflicting evidence. Annayeva, 597 S.W.3d at 198. When

1
 All statutory references are to RSMo (2000), unless otherwise indicated.

 8
the Commission affirms or adopts the ALJ’s findings, we review the findings of the ALJ as adopted

by the Commission. Cardwell v. Treasurer of State of Mo., 249 S.W.3d 902, 906 (Mo. App. E.D.

2008).

 Discussion

 “Section 287.220 creates the Fund and imposes liability on the Fund in certain cases of

permanent disability where there is a preexisting disability.” Lewis v. Treasurer of State, 435

S.W.3d 144, 152 (Mo. App. E.D. 2014) (footnote omitted). “The Fund is liable where a claimant

establishes either that he is permanently and totally disabled due to the combination of his present

compensable injury and his preexisting partial disability or the combination of his present

compensable injury and his preexisting permanent partial disabilities create an overall greater

disability than the sum of the disabilities independently.” Id.

 “Section 287.190.6(1) [RSMo (Cum. Supp. 2011)] defines [PPD] as a disability that is

permanent in nature and partial in degree.” Michael v. Treasurer, 334 S.W.3d 654, 663 (Mo. App.

S.D. 2011) (internal quotation marks omitted). To receive PPD benefits, a claimant must prove

“the last compensable injury, when combined with a pre-existing permanent partial disability,

created a greater overall disability than the independent sum of the disabilities.” Id. “[PPD] is not

dependent on the employee’s inability to work.” Id. (quoting Cardwell, 249 S.W.3d at 910).

 PTD means the “inability to return to any employment and not merely [the] inability to

return to the employment in which the employee was engaged at the time of the accident.” Section

287.020.6, RSMo (2016). It “arises when the employee’s injury is such that the employee has

become permanently unemployable on the open labor market and is entitled to benefits through

the remainder of the employee’s lifetime.” Nivens v. Interstate Brands Corp., 585 S.W.3d 825,

835 (Mo. App. W.D. 2019). “The primary determination is whether an employer can reasonably

 9
be expected to hire the employee, given his or her present physical condition, and reasonably

expect the employee to successfully perform the work.” Williams v. Treasurer of State-Custodian

of Second Injury Fund, 588 S.W.3d 919, 928-29 (Mo. App. W.D. 2019).

 Here, Claimant sought both PPD and PTD benefits from the Fund for his various workplace

injuries. In his first point on appeal, he challenges the Commission’s award denying his PTD

claim based on his hearing loss. In his second point, he contends the Commission erred in denying

his PPD claims relating to his August 2011, June 2012 and November 2012 back injuries.

Claimant’s third point alternatively challenges the Commission’s award denying his PTD claim

relating to his November 2012 back injury.

 We find the Commission’s awards relating to Claimant’s PPD claims and his alternative

claim for PTD for his November 2012 back injury are supported by sufficient competent evidence.

We conclude, however, the Commission’s award denying Claimant’s PTD claim based on his

hearing loss is not supported by sufficient competent evidence. We hold that Claimant has shown

he is permanently and totally disabled due to the combination of his hearing loss and his preexisting

disabilities.

 To explain why the Commission’s award denying Claimant’s PTD claim based on his

hearing loss is erroneous, we must first establish which of his back injuries qualify as preexisting

partial disabilities. For ease of analysis, we will first discuss Claimant’s second and third points

on appeal, which pertain to his claims for PPD and PTD relating to his various back injuries.

 Denial of PPD and PTD for Back Injuries

 Claimant asserts the Commission erred in denying PPD benefits for his August 2011, June

2012 and November 2012 back injuries and, alternatively, PTD for his November 2012 back

injury. He contends there was not sufficient competent evidence to support the Commission’s

 10
denial of those claims because he was not required to establish an exact percentage of disability

for each primary injury. Claimant argues he established the nature and extent of each primary

injury by overwhelming evidence.

 When a claimant alleges the Commission’s award is not supported by sufficient competent

evidence, we “must examine the whole record to determine if it contains sufficient competent and

substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming

weight of the evidence.” Hampton v. Big Boy Steel Erection, 121 S.W.3d 220, 222-23 (Mo. banc

2003). The claimant must engage in a specific analytical process. Parvin v. Camcorp Env’t, LLC,

597 S.W.3d 357, 360-61 (Mo. App. S.D. 2020). Specifically, a claimant must:

 1. Identify a factual proposition necessary to sustain the Commission’s result;

 2. Marshal all evidence in the record supporting that factual proposition, subject
 to the Commission’s authorized factual and credibility determinations[; and]

 3. Demonstrate why the evidence from the second step lacks sufficient probative
 force on the issues, such that the Commission could not have reasonably
 believed the factual proposition set forth in step one.

Id. (quotation omitted).

 Claimant challenges the Commission’s implicit finding that the report of Dr. Cantrell

constituted sufficient competent evidence that Claimant suffered no permanent disability, partial

or total, for his November 2012 back injury and the Commission’s explicit finding that Dr.

Margolis’s opinion that Claimant suffered permanent disability from his August 2011, June 2012

and November 2012 back injuries was not persuasive because he assigned an equal rating of 6.25%

to each of those injuries. After marshalling the evidence in Dr. Cantrell’s report supporting the

Commission’s findings, Claimant argues Dr. Cantrell’s conclusions were not based on sufficient

competent evidence and that the Commission’s reasoning for rejecting Dr. Margolis’s opinion was

improper. We disagree.

 11
 A claimant bears the burden to prove “not only causation between the accident and the

injury but also that a disability resulted and the extent of such disability.” Griggs v. A.B. Chance

Co., 503 S.W.2d 697, 703 (Mo. App. 1973). “The Commission is free to believe whatever expert

it chooses as long as each opinion is based on substantial and competent evidence, and the appellate

court will not disrupt such choice even if the competing expert is worthy of belief.” Schlereth v.

Aramark Unif. Servs., Inc., 589 S.W.3d 645, 654 (Mo. App. E.D. 2019) (quotation omitted).

 Here, the Commission was presented with opposing expert opinions regarding the nature

and extent of Claimant’s various back injuries. Dr. Margolis attributed Claimant’s disability to

the four back injuries, but he could not apportion the injuries individually and instead divided his

25% total rating equally among the back injuries—a method of apportionment he conceded was a

“guess.” Dr. Cantrell, on the other hand, concluded Claimant did not suffer a permanent disability

of any kind as a result of the August 2011, June 2012 and November 2012 back injuries and that

he only suffered a permanent disability from the May 2012 back injury. Notably, Dr. Cantrell

linked Claimant’s continued issues with his back to the May 2012 injury and his other previous

injuries.

 Having considered the conclusions of Dr. Margolis and Dr. Cantrell, the Commission was

free to rely on the opinion it deemed the most credible and persuasive. The Commission denied

PPD benefits for the August 2011, June 2012 and November 2012 back injuries after finding Dr.

Margolis’s method of apportionment to not be persuasive. The ALJ, whose findings were adopted

by the Commission, stressed that Dr. Margolis admitted to guessing regarding apportionment and

that he could not individually apportion the back injuries. The Commission’s credibility findings

are not subject to review by this Court. See Annayeva, 597 S.W.3d at 200.

 12
 Claimant argues the Commission erred in discrediting Dr. Margolis’s opinion because he

was not required to establish an exact percentage of disability for any of the injuries since the

determination of an exact percentage “is a finding of fact within the special province of the

Commission.” This argument fails, however, because the fact that the Commission can deviate

from the percentage of disability offered by medical experts does not relieve a claimant from the

burden of proving the nature and extent of his or her disability. See Griggs, 503 S.W.2d at 703.

 Claimant’s alternative PTD claim for his November 2012 back injury also fails because the

Commission denied that claim after concluding Claimant’s evidence that the injury resulted in a

permanent disability was not persuasive. See Annayeva, 597 S.W.3d at 200.

 In sum, the Commission’s awards denying Claimant’s PPD claims for his August 2011,

June 2012 and November 2012 back injuries, and his alternative claim for PTD stemming from

his November 2012 back injury, are supported by sufficient competent evidence. As determined

by the Commission, the only back injury Claimant sustained that resulted in PPD was his May

2012 back injury. Points II and III are denied.

 Denial of PTD for Hearing Loss

 We now turn to Claimant’s first point relied on. He argues the Commission’s award

denying his claim for PTD based on his occupational hearing loss is erroneous because it is not

supported by sufficient competent evidence. We agree.

 Claimant challenges the Commission’s conclusion that he was not permanently and totally

disabled due to the combination of his hearing loss and preexisting disabilities. The Commission

concluded Claimant “has not persuaded us that his hearing loss (the primary injury) has combined

with his preexisting conditions to result in [PTD].” The Commission went on to explain its

reasoning for finding no combination of disabilities stating: “The evidence most strongly supports

 13
the conclusion that if [Claimant] is permanently and totally disabled, it is based on his prior

physical injuries, pain, and physical limitations, without consideration of the hearing loss.”

 As an initial matter, we note the Commission’s explanation—that if Claimant is totally

disabled he was totally disabled before any consideration of hearing loss—is in conflict with its

own award finding Claimant is not permanently and totally disabled based on his last back injury

and his preexisting disabilities. The Commission awarded PPD benefits for Claimant’s May 2012

back injury in combination with prior disabilities to the right shoulder, the neck (body as a whole),

depression and anxiety (body as a whole), the right wrist and the left wrist. Thus, its reason for

finding no combination of the hearing loss with prior disabilities is inconsistent with its conclusion

that Claimant was not permanently and totally disabled before consideration of his hearing loss.

 Before reaching this inconsistent conclusion, the Commission found these facts:

 1. “Dr. Margolis’ written opinion on [PTD] was based solely on the physical
 injuries, age, and work experience. He did not include hearing loss in his
 analysis as it had not yet been evaluated. Further, he indicated he would defer
 to vocational rehabilitation evaluation.”

 2. Mr. Stock’s vocational rehabilitation “opinion regarding [PTD] is primarily
 based on the physical limitations on movement and [Claimant’s] reports of
 constant pain. In addition, Mr. Stock mentions a reading and hearing
 disability.”

 3. “[Claimant’s] primary care physician Dr. David Bean, who treated employee
 for various injuries, conditions, and pain complaints over the years, advised
 [him] that he should not continue performing the duties of his job and he should
 apply for disability as early as February 2011. . . . Nothing in the record
 suggests that Dr. Bean was considering hearing loss as [a] reason [Claimant]
 could not perform his job duties.”

 Claimant argues these facts are not supported by the record and lack sufficient probative

force on the issue of whether his hearing loss combined with his preexisting disabilities, rendering

him permanently and totally disabled. We agree.

 14
 Claimant contends the Commission misstated Dr. Margolis’s written report, stressing that

Dr. Margolis noted during his examination that Claimant was hard of hearing. Dr. Margolis

testified he reviewed the records of Dr. Davis, who had concluded Claimant had bilateral sensory

neural hearing loss. Dr. Margolis deferred to Dr. Davis regarding Claimant’s level of disability

for his hearing loss. Claimant notes Dr. Margolis testified, without objection, that he believed

Claimant’s preexisting injuries combined with his “work-related injuries and hearing loss to create

a greater overall disability” and that all those conditions, including Claimant’s hearing loss,

“constitute[d] a hindrance or obstacle to obtaining and maintaining employment.” (emphasis

added). Claimant emphasizes that Dr. Margolis testified that, although Claimant’s hearing loss

was “the least of the players . . . in terms of his being totally disabled from employment,” he is

permanently and totally disabled from employment if he is “in a job that requires hearing,

significant hearing.”

 The Commission’s findings of fact regarding Dr. Margolis’s opinion do not accurately

reflect his opinion. The fact that Dr. Margolis stated he deferred to Dr. Davis regarding Claimant’s

level of disability for his hearing loss is not sufficient competent evidence to justify the

Commission’s denial of PTD. Dr. Davis assessed a disability rating of 12.8% for Claimant’s

binaural hearing loss. The Commission found Claimant suffered 10.25% binaural hearing loss,

similar to the percentage determined by Dr. Davis. Dr. Margolis’s deference to Dr. Davis on the

level of Claimant’s hearing loss disability is not a reasonable basis for the Commission to find

Claimant’s preexisting disabilities did not combine with his hearing loss to cause PTD. Nor is the

Commission’s finding that Dr. Margolis indicated “he would defer to vocational rehabilitation

evaluation” regarding Claimant’s hearing loss sufficient competent evidence to justify the

Commission’s denial of PTD.

 15
 The Commission’s findings of fact also do not accurately reflect Mr. Stock’s opinion. He

testified Claimant was unemployable because of “the combined effect” of his preexisting

disabilities, back injuries, and “a bilateral hearing loss.” (emphasis added). Mr. Stock explained

the hearing loss affected Claimant’s ability to work because, “Well, if he can’t hear, he’s going to

misconstrue what’s being said, and then misinterpret it. It really hampers his ability to

communicate.” The Commission’s findings of fact emphasize Mr. Stock’s opinion regarding PTD

was “primarily based on the physical limitations on movement and [Claimant’s] reports of constant

pain.” (emphasis added). But, similar to the Commission’s conclusion that if Claimant is totally

disabled he was totally disabled before any consideration of hearing loss, this finding conflicts

with the Commission’s determination that Claimant is not permanently and totally disabled based

on his last back injury and preexisting disabilities.

 Claimant contends the Commission’s finding regarding Dr. Bean is not probative on the

issue of whether he is permanently and totally disabled due to the combination of his hearing loss

and his preexisting disabilities, stressing that Dr. Bean’s opinion was limited to whether Claimant

could return to his job with Employer as a ramp agent due to his back injuries. Claimant argues

Dr. Bean did not opine about whether Claimant could engage in other forms of employment.

 We agree with Claimant that Dr. Bean’s opinion does not show he was not totally and

permanently disabled by his hearing loss in combination with his prior disabilities. Under section

287.020.6, RSMo (2016), the determination of whether a claimant is permanently and totally

disabled requires consideration of whether he or she is unable to return to “any employment and

not merely [unable] to return to the employment in which [he or she] was engaged at the time of

the accident.” Therefore, Dr. Bean’s recommendation that Claimant stop working as a ramp

service agent is insufficient by itself to establish he was permanently and totally disabled. Further,

 16
by focusing on Dr. Bean’s recommendation, the Commission again suggests Claimant was

permanently and totally disabled based on his physical injuries alone. That suggestion, of course,

conflicts with the Commission’s determination that Claimant was not. The fact that Dr. Bean did

not opine on Claimant’s hearing loss is not sufficient competent evidence to support the

Commission’s denial of PTD for all of Claimant’s physical disabilities in combination with his

hearing loss.

 Generally, the acceptance or rejection of evidence is for the Commission. See Houston v.

Roadway Express, Inc., 133 S.W.3d 173, 179 (Mo. App. S.D. 2004). “When the Commission

reaches its decision by expressly making credibility findings, the Commission may disbelieve

uncontradicted and unimpeached testimony.” Hazeltine v. Second Injury Fund, 591 S.W.3d 45,

59 (Mo. App. E.D. 2019). “But where the record is ‘wholly silent concerning the Commission’s

weighing of credibility’ and neither the claimant nor the experts testifying on his or her behalf are

contradicted or impeached, the Commission ‘may not arbitrarily disregard and ignore competent,

substantial and undisputed evidence.’” Id. (quoting Houston, 133 S.W.3d at 179-80).

 Here, Claimant testified that, in addition to being unable to work as a ramp service agent,

he did not believe he could accept a job stocking items at a store, working at a cash register or

greeting customers because of his difficulty hearing. Dr. Margolis testified Claimant was hard of

hearing and that he had reviewed Dr. Davis’s records regarding Claimant’s hearing loss. Dr.

Margolis concluded Claimant’s preexisting injuries “combined with [his] work-related injuries

and hearing loss to create a greater overall disability” and that all those conditions, including

Claimant’s hearing loss, constituted a hindrance or obstacle to obtaining and maintaining

employment. (emphasis added). He opined Claimant is permanently and totally disabled from

employment if he is “in a job that requires hearing, significant hearing.”

 17
 Mr. Stock testified Claimant told him during his examination he felt he could not work

because of his hearing loss. Mr. Stock testified he did not believe Claimant “has any transferable

skills to any other type of employment” and that Claimant is “permanently and totally disabled

based on all of his documented injuries.” (emphasis added). Mr. Stock opined the combination

of Claimant’s pre-existing injuries and work-related injuries resulted in his permanent and total

disability. Although Mr. Stock also performed a psychological evaluation of Claimant and

concluded he suffered from depression, Mr. Stock opined Claimant was not employable and was

disabled based on his “physical limitations alone.” All of the opinions of Mr. Stock included

Claimant’s hearing loss.

 Neither Claimant nor the experts testifying on his behalf were contradicted. Although the

Fund produced the report of Dr. Cantrell, that report did not address Claimant’s hearing loss or

include an opinion as to whether he was permanently and totally disabled based on the combination

of his preexisting disabilities with or without considering his hearing loss. Dr. Cantrell was not

deposed. Nor did the Commission base its denial of PTD benefits for Claimant’s hearing loss on

its belief or disbelief of any witness, expert or otherwise.

 The Fund argues the Commission denied Claimant’s hearing loss claim based on witness

credibility determinations, asserting that the Commission did not believe Dr. Margolis’s testimony

and was instead persuaded by Dr. Cantrell’s opinion. This argument, however, does not reflect

the Commission’s award. The Commission found Dr. Cantrell more persuasive than Dr. Margolis

on whether Claimant was permanently and partially disabled based on his August 2011, May 2012,

June 2012 and November 2012 back injuries, as discussed with regard to Claimant’s second and

third points on appeal. That finding, however, did not address the persuasiveness of Dr. Margolis

as to whether Claimant was permanently and totally disabled based on his hearing loss in

 18
combination with his preexisting disabilities. The Commission’s conclusion that Claimant “has

not persuaded us that his hearing loss . . . has combined with his preexisting conditions to result in

[PTD]” is a medical determination—the lack of combination of disabilities—not a credibility

determination. (emphasis added). The Commission’s award found Dr. Margolis did not opine on

Claimant’s hearing loss. But Dr. Margolis did in fact provide an opinion as to Claimant’s hearing

loss. And Dr. Cantrell offered no opinion regarding Claimant’s hearing loss or on Claimant’s

various preexisting conditions in his report. “When a workers’ compensation record shows no

conflict in the evidence or impeachment of witnesses, the reviewing court may find the award was

not based upon disbelief of the testimony of the witnesses.” Hayden v. Cut-Zaven, Ltd., 614

S.W.3d 44, 61 (Mo. App. E.D. 2020) (quotations omitted).

 The record before us contains no evidence supporting the Commission’s conclusion that

any permanent disability Claimant sustained was sustained “without consideration of the hearing

loss.” The record instead shows Claimant testified he does not believe he could accept any job

stocking items at a store, working at a cash register or greeting customers because of his difficulty

hearing. Neither Dr. Margolis nor Mr. Stock testified that they did not consider Claimant’s hearing

loss when opining on whether he was permanently and totally disabled. To the contrary, Dr.

Margolis testified he believed Claimant’s preexisting injuries “combined with [his] work-related

injuries and hearing loss to create a greater overall disability” and all those conditions, including

Claimant’s hearing loss, constituted a hindrance or obstacle to obtaining and maintaining

employment. (emphasis added). Dr. Margolis testified he believed Claimant is permanently and

totally disabled from employment if Claimant is “in a job that requires hearing, significant

hearing.” And Mr. Stock testified he believed the combination of Claimant’s preexisting injuries

 19
and work-related injuries, including Claimant’s hearing loss, resulted in his permanent and total

disability.

 The unimpeached, uncontradicted expert evidence supports the conclusion Claimant is

permanently and totally disabled based on his hearing loss in combination with his preexisting

disabilities. The Commission reached its conclusion that Claimant was not permanently and

totally disabled on that basis on its own, without regard for the evidence in the record and without

making any credibility determinations on the issue decided. “The Commission may not arbitrarily

disregard or ignore competent, substantial, and undisputed evidence of witnesses not impeached

or base its finding on . . . its own opinion unsupported by sufficient evidence.” Hazeltine, 591

S.W.3d at 60.

 We reverse the Commission’s award finding Claimant is not permanently and totally

disabled based on the combination of his hearing loss and preexisting disabilities because it is not

supported by sufficient competent evidence. We remand with instructions for the Commission to

enter an award of PTD consistent with the findings in this opinion. Point I is granted.

 Conclusion

 The Commission’s awards denying PPD for Claimant’s August 2011, June 2012 and

November 2012 back injuries and, alternatively, denying PTD for Claimant’s November 2012

back injury are affirmed. The Commission’s award denying PTD for Claimant’s hearing loss is

reversed. We remand this case to the Commission with instructions to enter an award of PTD

consistent with the findings in this opinion.

 _______________________________
 MICHAEL E. GARDNER, Judge

Gary M. Gaertner, Jr., P.J., concurs.
Philip M. Hess, J., concurs.

 20