**Richard BOYER, Employee/Appellant,**

v.

**NATIONAL EXPRESS CO., INC., Employer/Respondent.**

No. ED 78107.

Missouri Court of Appeals, Eastern District, Division Four.

May 29, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 3, 2001.

Joseph L. Bauer, Jr. Michael L. Nepple, Bauer & Baebler, P.C. St. Louis, MO, Attorneys for Appellant.

Susan M. Kelly, Clayton, MO, Attorneys for Respondent.

SIMON, Judge.

Richard Boyer (Boyer) appeals from an award of the Labor and Industrial Relations Commission (Commission), which adopted and affirmed the findings of fact and conclusions of law of the administrative law judge (ALJ) denying Boyer's claim for future medical benefits and setting Boyer's permanent partial disability in his workers' compensation claim against his former employer, National Express Co. Inc. (employer).

On appeal, Boyer contends the Commission erred by: (1) finding and setting an amount of Boyer's permanent partial disability because: (a) the Commission acted without or in excess of its powers pursuant to Section 287.495 RSMo 1994 (all further references herein shall be to RSMo 1994 unless otherwise indicated) in that the parties did not stipulate the percentage of permanent partial disability was an issue

for trial; and (b) the Commission's sua sponte award denies Boyer the fundamental right to present contrary evidence of the correct amount of permanent partial disability, should the Commission find against him on his claim of need for additional medical care, as it would be inherently inconsistent for Boyer to allege that he needed additional medical treatment, while at the same time being required to try the issue of percentage of permanent partial disability which presupposes that Boyer reached maximum medical improvement; (2) issuing an award that denied Boyer future medical care and treatment, including an anterior cervical discectomy, pursuant to Section 287.495 because there was not sufficient competent evidence in the record to support the award in that employer introduced the opinions of two physicians, Drs. Petkovich and Samson, who held directly contrary opinions about whether Boyer sustained a permanent injury or needed surgery and, thus, employer's evidence did not rise to the level of substantial and competent evidence; (3) rejecting the testimony of Boyer's expert, Dr. Schoedinger, on the basis that his recommendation for surgery was too remote from Boyer's initial medical treatments because the Commission may not reject competent medical causation testimony in the areas of medical causation and diagnosis on the basis of its own beliefs in the area in that Dr. Schoedinger testified that Boyer sustained a permanent injury and was in need of an anterior cervical discectomy and fusion and no other medical testimony in the record criticized or otherwise rejected Dr. Schoedinger's opinions simply on the basis of a lapse in time between initial and subsequent treatment; and (4) denying Boyer future medical care and treatment, including an anterior cervical discectomy and fusion, because even assuming, arguendo, that there is substantial and competent evidence to support the award

of the Commission, the denial is clearly contrary to the overwhelming weight of the evidence contained in the record as a whole in that Boyer's treating doctor, Dr. Schoedinger, diagnosed a herniated disc within a few months of the injury, and the two doctors paid by employer hold opposing opinions in that Dr. Petkovich testified Boyer has no permanent injury from the work incident but may need surgery, whereas Dr. Samson testified Boyer has a permanent injury from the work incident which does not need surgery. We reverse and remand in part and affirm in part.

■ We may modify, reverse, remand for rehearing or set aside an award or decision of the Commission only if the Commission's actions were unauthorized by law, in excess of its authority, fraudulent, unsupported by the facts as found by the Commission or unsupported by competent evidence on the whole record. *Mann v. Varney Const.*, 23 S.W.3d 231, 232 (Mo. App. E.D.2000). We defer to the Commission when it resolves issues concerning credibility and weight to be given to conflicting evidence. *Lammert v. Vess Beverages, Inc.*, 968 S.W.2d 720, 723 (Mo.App. E.D.1998). We review questions of law independently. *Cahall v. Cahall*, 963 S.W.2d 368, 372 (Mo.App. E.D.1998).

The record indicates that Boyer was employed by employer as a courier when, on June 10, 1995, near the end of his work shift, he stopped at a convenience store to call dispatch to inquire whether his work was complete for the day. As he walked across the parking lot on the way to use the phone, he was struck by a car that was backing out of a parking space. Immediately after the accident, Boyer experienced numbness and tingling in his left hand and elbow.

Boyer never returned to employer, but went to work as a courier at Bee Fast, but

he left after a few months because he was lifting up to fifty pounds and the lifting and the pushing of fifty-five gallon drums aggravated his neck. He then worked at Fas–Go, another courier service. While working at Fas–Go, he was also lifting up to fifty pounds, which continued to aggravate his neck. He left Fas–Go after three years because he could no longer deal with the pain.

On January 18, 1996, Boyer filed a claim for workers' compensation against employer based on injuries sustained when hit by the car, while employed by employer. On February 16, 1996, employer and its insurer, Commercial Union Insurance Co. (Commercial Union), filed their joint answer to the claim stating they were without sufficient knowledge to affirm or deny the allegations contained in Boyer's claim. Subsequently, Boyer filed a Hardship Petition seeking additional medical care, pursuant to Section 287.203.

The record reveals that at the start of the proceeding, the ALJ dictated:

Thank you. This matter proceeds pursuant to hardship petition. I understand the stipulations are as follows: That claimant sustained accident on or about June 10, 1995, and that employer paid initial medical benefits to date in the amount of $970.50.

The issues for trial are as follows: Number one, medical causation; number two, liability for unpaid medical expenses in the stipulated amount of $4,969 and no cents. Third, liability for future medical expenses; number four, liability for temporary total disability benefits and specifically in the event liability is imposed against employer, past due temporary total disability benefits in the stipulated amount of six weeks. And finally, number five, the rate of compensation is at issue.

[Boyer's attorney], do you concur with what I dictated?

[Boyer's attorney]: Yes, your honor.

[ALJ]: And, Ms. Kelly (Employer's attorney), do concur with what I dictated.

[Employer's attorney]: Yes, Judge.

At the hearing, Boyer was the only individual to testify. The deposition of Dr. Schoedinger, Boyer's medical history, his pay rate, Fas–Go 1999 earnings, and Boyer's Premier Care statement were admitted. At employer's request Boyer's earning records, reports of Dr. Petkovich, depositions of Dr. Samson and Dr. Petkovich were admitted.

On June 12, 1995, Boyer visited Dr. Simpello and complained that his left hand was numb. He returned to Dr. Simpello on June 19, 1995, and complained of neck stiffness, tightness in his shoulder and back and that his hand still hurt. Boyer again visited Dr. Simpello on July 5, 1995, and complained of continued neck stiffness and numbness in his hand.

On October 30, 1995, Boyer saw Dr. Schoedinger. Per Dr. Schoedinger's deposition, he testified that Boyer's symptoms suggested nerve root irritation arising in the spine and that he may have suffered a ruptured cervical disc. He further testified that a magnetic resonance imaging (MRI) was performed in November of 1995 and revealed abnormalities at C4–5, C5–6 and C6–7 as well as in the dorsal area at T1–2. He also discussed with Boyer the cervical contrast studies, which were subsequently performed on June 12, 1995. He testified that the cervical myelogram revealed an abnormality of the C4–5 level. Furthermore, the post myelographic computerized tomography (CT) scan of the cervical spine revealed abnormalities at C4–5 as well as at C5–6 and to a lesser extent at C3–4.

Boyer again saw Dr. Schoedinger on May 2, 1996, and was complaining of shoulder pain. An arthrogram was performed and it ruled out any abnormality in the shoulder. After the May 2, 1996 visit, Dr. Schoedinger saw Boyer in his office on May 24, 1999. A letter to Boyer attached as an exhibit to Dr. Schoedinger's deposition indicates Boyer returned to Dr. Schoedinger's office in October of 1998 and advised him that his symptoms were related to cervical pathology and if his symptoms were severe and unremitting, Dr. Schoedinger would recommend an anterior cervical discectomy and fusion. Dr. Schoedinger told Boyer that, given the length of time that has elapsed since his diagnostic workup, he would recommend a repeat MRI and discography prior to any consideration of surgical treatment. Dr. Schoedinger further advised, until such time as Boyer is unable to live with his difficulty, he would not recommend surgical treatment.

Dr. Schoedinger next evaluated Boyer on June 29, 1999, and performed further diagnostic studies. An MRI revealed degenerative changes as well as posterior disc protrusions at C4–5, C–5 and C6–7. A myelogram noted extra dural defects at C3–4, C4–5 and C5–6 and a CT scan revealed posterior protrusions at C5–6 as well as C4–5 and, to a lesser extent, C3–4. A discogram was accomplished at C4–5 and C5–6 level and reproduced portions of his symptoms. Dr. Schoedinger diagnosed a herniated nucleus pulposus at C4–5 and C5–6 and he again recommended surgery if Boyer's pain becomes intolerable.

Per Dr. Samson's deposition, Boyer was examined in February of 1999 at the request of Commercial Union and Dr. Samson made a diagnosis of cervical spondylosis. He testified that no studies including the CT, the myelogram or the MRI demonstrated a herniated disc and the only test performed in 1995 that suggested a herniated disc was a discogram. Dr. Samson concluded that Boyer did not need surgery based upon his examination and review of Boyer's prior records. Dr. Samson further concluded that Boyer was not in need of any further medical treatment as a result of the work injury, and that Boyer had a strained neck in addition to arthritis in his neck. Dr. Samson rated Boyer's permanent partial disability at 3% to 5% of cervical spine as a result of the work injury.

Per Dr. Petkovich's deposition, Boyer was examined on April 1, 1998, at the request of employer with follow-up visits on July 28, 1998, and August 11, 1998. During one of the follow up visits, an MRI was performed and showed that Boyer had some underlying cervical spondylosis at C4–5, C5–6 and C6–7. He concluded Boyer sustained a cervical strain as a result of the 1995 work accident, but had pre-existing degenerative disc disease which was temporarily exacerbated by the accident. Furthermore, he concluded that Boyer's condition progressed between 1995 and 1998. Dr. Petkovich testified that one would expect this degenerative disease to progress and become worse. He further testified that he did not think the injury in 1995 had anything to do with the degenerative changes. Finally, Dr. Petkovich indicated he did not think the injury, on June 10, 1995, had anything to do with the degenerative changes. Further, he thought the injury in 1995 was a soft tissue injury that may have caused some temporary exacerbation of these degenerative changes, but basically they were preexisting the injury from 1995. Dr. Petkovich did not recommend any surgery.

The ALJ made findings of fact and conclusions of law, finding that Boyer worked for employer on the reported accident date as a courier driver, and underwent treat-

ment including referral to an orthopedist, Dr. Petkovich, as late as April 1998, who examined him two more times that summer. The ALJ noted that in June 1995, a myelogram with discogram revealed, among other abnormalities, a disc pathology at C4–5 and in November 1995, an MRI revealed the same disc pathology. The ALJ further noted, although not contained in patient history, that Boyer admitted, on cross-examination, to doing heavy labor subsequent to the pushing of fifty-five gallon drums in 1996, which he admitted aggravated his neck.

The ALJ relied on *Plaster v. Dayco Corp.,* 760 S.W.2d 911 (Mo.App.1988), for the proposition that it is reasonable to expect an expert to be fully informed about pre-existing disabilities. Further, the ALJ found, in all events, the chain of symptoms and treatment was broken and the current recommendations by Dr. Schoedinger are too remote (three years) from the original series of treatments. On the basis of substantial and competent evidence contained within the whole record, the ALJ awarded Boyer 5% permanent partial disability of the cervical spine and payment of $1,014.00 in medical expenses.

█ In first his point on appeal, Boyer contends the Commission erred by finding and setting an amount of Boyer's permanent partial disability because the Commission acted without or in excess of its powers pursuant to Section 287.495 by making such an award. Boyer bases his argument on the fact that the parties did not stipulate that the percentage of permanent partial disability was an issue for trial. Furthermore, Commission's sua sponte award denies him the fundamental right to present contrary evidence of the correct amount of permanent partial disability should the Commission find against him on his claim of need for additional medical care. Finally, he argues it would be inherently inconsistent to allege that he needed additional medical treatment, while at the same time being required to try the issue of percentage of permanent partial disability.

Employer argues Boyer was aware that the degree of permanent partial disability was in question, even though it admitted the issue of permanent partial disability was not stipulated as an issue for trial. Furthermore, it argues that in Dr. Samson's deposition Boyer's attorney asked questions regarding the degree of permanent partial disability in his cross-examination of Dr. Samson.

█ The rules of the Department of Labor and Industrial Relations, in particular, 8 CSR 50–2.010(14), provide: "hearings before the division shall be simple, informal proceedings. The rules of evidence for civil cases in the state of Missouri shall apply. Prior to hearing, the parties shall stipulate uncontested facts and present evidence only on contested issues." Therefore, the ALJ should confine the evidence during the hearing to the stated contested issues. *Lawson v. Emerson Electric Company,* 809 S.W.2d 121, 125 (Mo.App. S.D.1991). Stipulations are controlling and conclusive, and the courts are bound to enforce them. *Spacewalker, Inc. v. American Family,* 954 S.W.2d 420, 424 (Mo.App. E.D.1997). A stipulation should be interpreted in view of the result, which the parties were attempting to accomplish. *Id.* In *Lawson,* our colleagues in the Southern District concluded that the Commission acted in excess of its powers in making its award on grounds not in issue. *Lawson v. Emerson Electric Company,* 809 S.W.2d at 126.

Here, the Order of the Commission provides that the "nature and extent of permanent disability" was an issue stipulated for trial. However, the record clearly shows it was not. Pursuant to the stipula-

tion, Boyer did not present any evidence as to his permanent partial disability. In Dr. Samson's deposition, he rendered an opinion as to Boyer's permanent partial disability, but the issue was not discussed by the parties or the ALJ at the hearing.

In its adoption and affirmance of the ALJ's findings and conclusions, Commission's decision to award a percentage of permanent partial disability went beyond the issues stipulated for trial and was in excess of its power. Thus, the award must be reversed and the cause remanded to provide Boyer an opportunity to present evidence as to the percentage of permanent partial disability.

■ In his second point, Boyer contends the Commission erred by issuing an award that denied him future medical care and treatment, including an anterior cervical discectomy, pursuant to Section 287.495. He argues there was not sufficient competent evidence in the record to support the award in that employer introduced the depositions of Drs. Petkovich and Samson, who held directly contrary opinions.

Boyer argues if employer had only introduced the deposition of Dr. Samson, then such evidence may have risen to the level of substantial and competent evidence, but when employer introduced the deposition of Dr. Petkovich, it left the Commission with two equally available factual inferences and made the decision a matter of pure speculation, which did not rise to the level of substantial and competent evidence

The record shows that Drs. Samson's and Petkovich's testimony and opinions are not in direct conflict and are not contradictory. They each indicated that Boyer did not need any further medical treatment and concluded that he had cervical degenerative disc disease and may have suffered a temporary exacerbation and/or suffered some permanent partial disability. Both

doctors concurred that he did not have a herniated disc diagnosed by any of the diagnostic studies performed in 1995 and that he had pre-existing arthritis.

Dr. Samson's opinion is substantial and competent evidence that Boyer was not in need of any further medical treatment and Dr. Petkovich's opinion supports that finding. The testimony of Drs. Samson and Petkovich either alone or together provides substantial and competent evidence to support the denial of future medical care.

■ In his third point, Boyer contends the Commission erred in rejecting the testimony of his expert, Dr. Schoedinger, on the basis that his recommendation for surgery was too remote from Boyer's initial medical treatments. He argues the Commission may not reject competent testimony in the area of medical causation and diagnosis on the basis of its own beliefs in that Dr. Schoedinger testified that Boyer sustained a permanent injury and was in need of an anterior cervical discectomy and fusion. Boyer argues that there is no medical evidence or any other testimony whatsoever that the delay in returning to see Dr. Schoedinger makes his opinions too remote and too far from the original injury.

■ Since the Commission is the sole judge of the credibility of the witnesses and the weight and value of the evidence, its determination regarding conflicting medical opinion will not be disturbed unless it is against the overwhelming weight of the evidence. *Lammert v. Vess Beverages, Inc.,* 968 S.W.2d at 724.

The evidence demonstrates a gap in time between the treatment of the initial injury and Dr. Schoedinger's recommendation for surgery. Substantial and competent evidence supports a finding that there

was not a definitive diagnosis of a herniated disc at C4–5 or surgery recommended until approximately four years after the injury. Furthermore, a review of the depositions of Drs. Samson and/or Petkovich demonstrates competent evidence to support the Commission's conclusion that Dr. Schoedinger's treatment recommendations are too remote from the original injury.

 In his fourth and final point, Boyer contends the Commission erred by denying him future medical care and treatment, including an anterior cervical discectomy and fusion, because the denial is clearly contrary to the overwhelming weight of the evidence contained in the record as a whole in that Boyer's treating doctor, Dr. Schoedinger, diagnosed a herniated disc within a few months of the injury. Secondly, the two doctors paid by employer, hold diametric opinions in that Dr. Petkovich testified Boyer has no permanent injury from the work incident, but may need surgery, whereas Dr. Samson testified Boyer has a permanent injury from the work incident, but does not need surgery Boyer argues the testimony of Dr. Schoedinger is overwhelming when compared to the findings of Dr. Samson. Boyer further argues that Drs. Samson's and Petkovich's opinions conflict and should be ignored.

Dr. Samson diagnosed cervical spondylolisthesis and noted that there was no herniated disc diagnosed in 1995 as demonstrated by the CT scan, myelogram or the MRI. Dr. Petkovich testified that, at the time of the original accident in 1995, Boyer sustained a cervical strain, but had pre-existing degenerative disc disease which was temporarily exacerbated by that accident. Further, when he saw Boyer in 1998 he did not make any recommendation for surgery and concluded that if Boyer needed surgery, it would not be a result of the accident in 1995.

A review of the several physicians' depositions demonstrates that there was not a definitive diagnosis of a herniated disc at C4–5 until 1998 or 1999. The diagnostic studies performed in 1995 demonstrate no definitive findings of a herniated disc at C4–5. Therefore, Boyer's fourth point is not meritorious.

Judgment reversed and remanded in part and affirmed in part.

LAWRENCE E. MOONEY, P.J. and SHERRI B. SULLIVAN, J., concur.