

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

LME, INC.,                              )
                                        )
      Appellant,                     )
                                        )
v.                                      )    WD85427
                                        )
ROBERT POWELL AND SECOND                )    Opinion filed:  February 21, 2023
INJURY FUND,                            )
                                        )
      Respondents.                   )

**APPEAL FROM THE LABOR AND
INDUSTRIAL RELATIONS COMMISSION**

Division One:  Anthony Rex Gabbert, Presiding Judge,
W. Douglas Thomson, Judge and Janet Sutton, Judge

LME, Inc. ("Employer") appeals the Final Award of the Labor and Industrial Relations Commission ("Commission") affirming and adopting the award of permanent total disability ("PTD") benefits and future medical care to Robert Powell ("Employee").  On appeal, Employer claims the Commission erred in (1) "failing to dismiss the employee's claim, because the hearing was not concluded within thirty days as required by § 287.460 RSMo (2021), in that under the statute only in extraordinary circumstances may the proceedings last longer than ninety days without good cause shown, and the administrative law judge (ALJ) provided no

explanation or good cause to deviate from the time requirement[,]" and (2) "determining the employee to be permanently and totally disabled . . . by misstating the agreement reached by the parties regarding the employee's maximum medical improvement (MMI) date, because the employer only agreed that the employee reached MMI for his physical injuries, in that the employer never accepted or admitted a psychological injury and therefore the employee cannot be determined to PTD [sic] until he has reached MMI for all conditions[.]"  (Capitalizations removed). We affirm.

## Factual and Procedural History

Employee is a thirty-five-year-old man who completed the ninth grade but has not obtained a GED.  Employee's medical history was of importance in the proceedings below.  When Employee was in elementary school, he had trouble focusing, received an ADHD diagnosis, and was treated with the medication Ritalin. Employee also experienced behavior issues and was eventually removed from the traditional classroom and placed in an alternative school, a lockdown non-residential facility, and homeschool.

From approximately 2000 or 2001 to 2003, Employee saw a doctor on an irregular basis "almost always on a crisis intervention situation."  In 2003 and 2004, Employee was admitted to Two Rivers Psychiatric Hospital ("Two Rivers") on three separate occasions, during which he was continued on or prescribed medication, received various diagnoses, and reported problems with anger and depression.

2

During this timeframe, Employee was also involved in two serious car accidents, the first occurring in September of 2003, where he broke his lower legs, pelvis, and lower back, sustained a skull fracture, and was in a coma for eleven days. This accident forced Employee to remain in a wheelchair for six months, but he was later able to return to work at a truck wash called Truckomat. The second car accident occurred in April of 2004, where Employee's face hit the windshield, knocking him unconscious, and the driver of the other car was killed. Employee suffered emotional trauma as a result, which led to his second admission into Two Rivers after an attempted suicide.

In 2006, Employee underwent a neuropsychiatric assessment by neuropsychologist Dr. William T. Blessing ("Dr. Blessing"). Dr. Blessing concluded there were "[a]reas of compromise . . . identified in memory, attention, speeded mental processing, executive function and psychomotor reaction time." He also found "[t]he demonstrated impairments appear most consistent with developmentally based conditions effecting cognition generally with traumatic brain injury superimposed on the preexisting deficits." Despite these impairments, Employee was able to complete tasks with the help of notetaking at every job he held following his car accidents, and he eventually completed truck driving school in 2008. Between 2008 and 2013, Employee held various jobs working as a truck driver, and also worked at his brother's furniture store for approximately six months.

3

In 2013, Employee began working for Employer as a local pickup and delivery truck driver. On March 9, 2016, Employee suffered a work injury while unloading a five-hundred-pound skid of sheet coil. When a pallet jack he was using started to roll down a ramp, he yanked back on it to slow it down. In doing so, he felt a sharp pain in his back. As a result, Employee was unable to finish his shift and was later taken to the work comp clinic where he was placed on light duty.

Employee's course of treatment following the work injury involved epidural injections, physical therapy, and medication. He also was referred to a spine surgeon, Dr. Alexander Bailey, M.D. ("Dr. Bailey"), during this time, who initially released Employee in June of 2016. Following this release, Employee was unable to pass a return-to-work physical, resulting in Employer terminating his position. A hardship hearing was subsequently held on March 24, 2017, after which the ALJ determined the March 9, 2016 accident was "the prevailing factor[1] in causing Employee's need for additional medical treatment[,]" and awarded Employee temporary total disability benefits.

Employee later underwent a lumbar decompression fusion on November 29, 2017, performed by Dr. Bailey. After the surgery, Employee initially felt a decrease

---

[1] "'The prevailing factor' is defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability." Section 287.020.3(1), RSMo (2014). Because "the statute in effect at the time of injury is generally the applicable version[,]" we cite to the version of the statute in effect on March 9, 2016, the date of Employee's injury. *Kayden v. Ford Motor Co.*, 532 S.W.3d 227, 229 n.1 (Mo. App. W.D. 2017) (citation omitted).

4

in pain, but began experiencing more pain upon starting physical therapy. This pain has continued. On April 12, 2018, Dr. Bailey determined Employee had reached MMI rate[2] and, pursuant to his April 17, 2018 rating report, subsequently released Employee to a medium-duty status on a permanent basis, giving him a 12.5% permanent partial disability[3] ("PPD") of the body as a whole rating, which "applie[d] in isolation to the work injury . . . and its potential impact on the lumbar spine."

Employee stated that prior to his work injury, he never missed work due to back pain, depression, or any psychiatric condition. He stated that in the year leading up to the work injury, he was functioning fine and was able to perform job functions full-time without accommodation. However, in July of 2018, Employee sought help on his own from Comprehensive Mental Health Services ("CMHS"). His initial assessment indicated symptoms of major depressive disorder ("MDD") and a previous bipolar diagnosis, and he reported noticing depression symptoms and experiencing suicidal ideation since he was a teen. He continues to seek psychiatric care and

---

[2] MMI, or maximum medical improvement, is "when an employee's condition has reached the point where further progress is not expected[.]" *Cardwell v. Treasurer of Mo.*, 249 S.W.3d 902, 910 (Mo. App. E.D. 2008) (citations omitted). "Although the term maximum medical improvement is not included in the statute, the issue of whether any further medical progress can be reached is essential in determining when a disability becomes permanent and thus, when payments for permanent partial or permanent total disability should be calculated." *Id.*

[3] "'Permanent partial disability' means a disability that is permanent in nature and partial in degree[.]" Section 287.190.6(1), RSMo (2005) (emphasis removed).

receive prescribed medications from CMHS, and a consistent diagnosis of MDD, recurrent, severe without psychotic features is apparent in CMHS records.[4]

On November 13, 2018, a report by physician Dr. James A. Stuckmeyer, M.D. ("Dr. Stuckmeyer") determined that "[a]s a direct, proximate, and prevailing factor of the accident occurring on March 9, 2016," Employee had sustained 35% PPD to the body as a whole, in addition to a preexisting 15% PPD to the body as a whole specific to his lumbar spine and pelvis injuries from his previous car accident. Dr. Stuckmeyer determined Employee "warrants an evaluation with a pain management specialist specializing in placement of spinal cord stimulators[,]" and provided additional work restrictions for Employee. These restrictions consisted of (1) "[n]o prolonged standing or walking greater than tolerated;" (2) [n]o repetitive bending, lifting, twisting involving the lumbar spine;" (3) [n]o lifting below waist height to exceed 20 to 25 pounds on an occasional basis; and" (4) "[n]o lifting above waist height to exceed 20 pounds on an occasional basis."

Dr. Stuckmeyer created a second report dated August 14, 2019, wherein he determined Employee was permanently and totally disabled[5] "as a direct, proximate,

---

[4] Employee stated that during the three months in between being released by Dr. Bailey and seeking help from CMHS, he was having more difficulty controlling his mood due to back pain and stresses he was under. He also stated that because of his back pain, sleep issues, and stress he and his family were going through, he "couldn't take it no more and . . . had to reach out for help."

[5] "The term 'total disability' as used in this chapter shall mean inability to return to any employment and not merely mean inability to return to the employment in which the employee was engaged at the time of the accident." Section 287.020.6, RSMo (2014) (emphasis removed).

and prevailing factor of the accident occurring on March 9, 2016," after reviewing two additional records: a vocational assessment by Terry Cordray ("Cordray"), and an April 15, 2019 report from psychiatrist Dr. Todd Hill, D.O. ("Dr. Hill") following an independent psychiatric evaluation.

Cordray had determined Employee "is not 'placeable' at any job and is totally vocationally disabled[,]" having opined "[Employee's] total vocational disability is a result of restrictions from the March 9, 2016 injury while working for [Employer]." Dr. Hill's impression concerning Employee consisted of (1) MDD, recurrent, severe without psychotic features, (2) somatic symptom disorder with predominant pain,[6] and (3) methamphetamine use disorder, moderate, in early remission. Dr. Hill also included two pre-existing psychiatric diagnostic impressions: mild neurocognitive disorder with behavioral disturbances secondary to traumatic brain injury, and ADHD by history. Dr. Hill opined Employee "has suffered permanent psychological injury" and that the March 9, 2016 accident "is the proximate, direct, and prevailing factor for [Employee]'s development of [MDD] and Somatic Symptom Disorder." Additionally, Dr. Hill stated that even though Employee needs ongoing treatment and medication management,[7] "the nature of his psychiatric/psychological problems

---

[6] Per Dr. Hill's report, "This is a condition in which the predominant focus of the clinical presentation is pain of sufficient severity to warrant medical attention. Somatic symptom disorders involve pain symptoms that are significantly distressing and disruptive to daily life, accompanied by excessive thoughts, feelings, and/or behaviors related to those symptoms."

[7] As noted in his April 15, 2019 report, Dr. Hill had written a previous letter on February 18, 2019, notifying Employee's counsel he "was in severe psychiatric distress at the time of the evaluation." Dr. Hill opined that Employee "need[ed] to be seen quickly" at CMHS or receive psychiatric services

is of such magnitude that he has suffered permanent psychiatric/psychological disability. The treatments recommended are not curative by any means, but they may help improve [Employee]'s life on a daily basis going forward and, at least, will help in crisis situations." Dr. Hill further stated "when one looks at the combination of his physical disability with his ongoing psychiatric/psychological symptoms and considering a vocational evaluation, it does appear more than likely that [Employee] is permanently and totally disabled." Dr. Hill assigned a 40% PPD rating to the body as a whole for the MDD diagnosis and a 15% PPD rating to the body as a whole for the somatic symptom disorder diagnosis, which he stated were in addition to Dr. Stuckmeyer's physical PPD ratings.[8]

On June 15, 2020, a final hearing took place before an ALJ at which Employee, Employer, and the Second Injury Fund ("SIF") were represented. At the outset, both Employee and Employer stipulated on the record to the MMI date of April 12, 2018, the date when Dr. Bailey released Employee. Also, Employee's exhibits were offered

---

elsewhere, and stated "[h]is medications are not helping . . . ." Dr. Hill also stated "[Employee] most likely needs to have his medications monitored much more closely and, if needed, inpatient psychiatric care." He further stated "this treatment is extremely necessary, reasonable, and would be customary for treating his ongoing psychiatric symptoms and illness. This treatment should be offered and paid for by the employer." Dr. Hill opined "[h]is current psychiatric decompensation, in my professional medical opinion, within a reasonable degree of medical certainty, is a direct result of the work-related injuries."

[8] Dr. Hill did not apportion any disability rating to Employee's ADHD, but he did "apportion a 10% [PPD] rating to the Neurocognitive Disorder secondary to traumatic brain injury, which pre-dated the March 9, 2016 work-related accident." Dr. Hill also noted how "[Employee]'s current level of pain and depression do appear to worsen his symptoms associated with his traumatic brain injuries," but stated "the majority of his psychiatric/psychological disability is secondary to the [MDD] and Somatic Symptom Disorder." He therefore apportioned an additional 5% PPD rating to the neurocognitive disorder for a total 15% PPD rating.

8

and received into evidence at this time. Employee began his testimony during this hearing, but during direct examination, he broke down crying, leading to a recess. Employee's counsel did not believe he was able to move forward, and therefore requested that the case be submitted on the evidence that would be entered. Employer objected to this proposal, wanting an opportunity to cross-examine Employee. Later during this hearing, Employee informed his counsel he had recently gotten back on his psychiatric medication and believed he could be stabilized in thirty to sixty days. As a result, Employee's counsel requested a continuance, which was granted without objection.

The hearing resumed on November 9, 2020. Employee continued his testimony, but during cross-examination, he became upset and a break was taken. When the proceedings resumed, Employee was not present, having "left the building upset with regard to having to continue answering questions." Employee's counsel again requested that the case be submitted on the evidence, and Employer again objected on the basis of wanting to finish cross-examining Employee. After a discussion on how to proceed, Employer's exhibits were received into evidence and the ALJ granted time for the parties "to submit a brief as to why it should or should not be submitted with or without today's testimony." The hearing was again continued without any objection.

The third hearing date took place on March 26, 2021. However, Employee did not make an appearance, and after repeated attempts to contact him, Employee's

9

counsel requested a continuance. Neither Employer nor the SIF objected, so the hearing was continued for a third time. The fourth and final hearing date occurred on May 17, 2021, during which Employee completed his testimony, additional exhibits by Employer were received, and all parties rested.

On August 11, 2021, the ALJ delivered her award, finding Employee "permanently totally disabled due to the injuries he sustained from the work accident of March 9, 2016 alone." Referencing the parties' stipulation concerning the MMI date, the ALJ determined Employer owed Employee PTD benefits beginning on April 12, 2018 and continuing "for so long as he remains permanently and totally disabled." The ALJ further ordered Employer to provide "future medical care to cure and relieve the effects of Employee's injury including, but not limited to, pain management, consideration of a spinal cord stimulator, and psychiatric care for depression."[9] No liability was found on behalf of the SIF.

In her findings of fact, the ALJ expressly found Employee credible, as well as the restrictions placed on Employee by Dr. Stuckmeyer. The ALJ also determined the work accident was the prevailing factor causing Employee's need for surgery and his ongoing disability "of both a physical and psychiatric nature."[10] Additionally, in

---

[9] Notably, the ALJ expressly stated she was "not ordering treatment for Employee's preexisting diagnosis of ADHD and Bipolar Disorder."

[10] Specifically, the ALJ found "the work accident caused a herniated disc at L4-L5 necessitating the extensive surgical procedure performed by Dr. Alexander Bailey[,]" as well as "that due to the work injury . . . Employee suffers additional psychiatric injury of Major Depression and Somatic Symptom Disorder as discussed by Dr. Hill in the form of additional depression."

10

finding Employee "sustained permanent total disability as a result of his work injury[,]" she found "the restrictions of Dr. Stuckmeyer to be more credible than those of Dr. Alexander Bailey who performed a very extensive surgery on Employee" and found "Employee's testimony about his ongoing symptoms credible and consistent with the nature of that surgery." Lastly, in holding Employer solely liable, the ALJ found "that, based on [Employee's] testimony and his ongoing restrictions of Dr. Stuckmeyer, he is disabled from all employment even without considering the preexisting disability which he had stemming from his motor vehicle accident or his prior psychiatric diagnoses."

Employer subsequently filed an Application for Review, citing six reasons for reversal, including its arguments that the ALJ erred in not dismissing the claim, and in determining Employee was permanently and totally disabled because his psychiatric condition had not reached MMI. The Commission affirmed and adopted the ALJ's award. Regarding Employer's claim that the ALJ erred in failing to dismiss the claim, the Commission "defer[red] to the ALJ's judgment in conducting her hearing[,]" and found "the ALJ properly exercised discretion in allowing the hearing to last longer than thirty days, as permitted by § 287.460 RSMo." The Commission noted "[t]he ALJ specifically found that "'extraordinary circumstances' existed in this matter that necessitated the hearing conclude longer than ninety days after commencement[,]'" as well as the discussion contained in Employee's brief concerning the circumstances that resulted in the continuances. Importantly, the Commission

11

also stated, "The employee's attorney further noted that the employer did not object on the record to any of the requested continuances." Concerning Employer's MMI claim, the Commission found that Employer's stipulation to the MMI date at the hearing precluded it from raising the issue on appeal. Employer appeals. Additional facts will be provided below, as necessary.

## Standard of Review

We "review[] the Commission's decision to determine if it is 'supported by competent and substantial evidence upon the whole record.'" *Surgery Ctr. Partners, LLC v. Mondelez Int'l, Inc.*, 647 S.W.3d 38, 41 (Mo. App. E.D. 2022) (quoting *Lexow v. Boeing Co.*, 643 S.W.3d 501, 504 (Mo. banc 2022)). "[We] will affirm the award unless: (1) the Commission acted without or beyond its powers; (2) the decision was fraudulently procured; (3) the Commission's findings of fact do not support the award; or (4) there was not sufficient competent evidence to support the award." *Id.* at 41-42 (citing § 287.495.1; *Schoen v. Mid-Mo. Mental Health Ctr.*, 597 S.W.3d 657, 659 (Mo. banc 2020)).

> Although we are not required "to view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award[,]" "[w]e will not substitute our judgment on issues of fact where the Commission was within its powers, even if we would arrive at a different initial conclusion." *Hampton [v. Big Boy Steel Erection]*, 121 S.W.3d [220,] 223 [(Mo. banc 2003)] (regarding inferences); *Molder [v. Mo. State Treasurer]*, 342 S.W.3d [406,] 409 [(Mo. App. W.D. 2011)] (citations omitted) (regarding issues of fact). "The Commission, as the finder of fact, is free to believe or disbelieve any evidence. We defer to the Commission's findings as to weight and credibility of testimony and are bound by its factual determinations." *Molder*, 342 S.W.3d at 409 (citation omitted).

12

*Jackson Cty. v. Earnest*, 540 S.W.3d 464, 469 (Mo. App. W.D. 2018) (first and second alteration in original). "'When, as here, the Commission affirms or adopts the findings of the ALJ, we review the decision and findings of the ALJ as adopted by the Commission.'" *Carver v. Delta Innovative Servs.*, 379 S.W.3d 865, 869 (Mo. App. W.D. 2012) (quoting *Lawrence v. Anheuser Busch Cos., Inc.*, 310 S.W.3d 248, 250 (Mo. App. E.D. 2010)). "[W]e only examine questions of law . . . which we review *de novo* . . . . Questions of statutory interpretation are similarly reviewed *de novo*." *Surgery Ctr. Partners*, 647 S.W.3d at 42 (citations omitted).

## Point I

Employer's first point on appeal claims the Commission "erred in failing to dismiss the employee's claim, because the hearing was not concluded within thirty days as required by § 287.460 RSMo (2021) . . . ." (Capitalizations removed). Employer argues "that under the statute only in extraordinary circumstances may the proceedings last longer than ninety days without good cause shown, and the [ALJ] provided no explanation or good cause to deviate from the time requirement." (Capitalizations removed).

This point has not been preserved on appeal. At no point during the hearing, which extended over *four separate dates*, did Employer ever object on the grounds of § 287.460's timing requirements or to any of the continuances. "In the absence of an objection, the issue is not properly before us." *Goodwin v. Farmers Elevator and Exch.*, 933 S.W.2d 926, 929 (Mo. App. E.D. 1996); *see also McCracken v. Wal-Mart*

13

*Stores E., LP*, 298 S.W.3d 473, 476 (Mo. banc 2009) ("[I]f a matter is not jurisdictional but rather is a procedural matter required by statute or rule . . . then it generally may be waived if not raised timely." (citations omitted)).  Employer appears to be aware of this, as it repeatedly asserts in its brief that it *did* object to Employee's requests for continuances.  Upon review of the record, however, this is simply not evident.  Rather, Employer objected to Employee's requests to submit the case on the depositions or on the evidence already presented, because it wanted to fully cross-examine Employee.[11]  Nowhere within the discussion of these objections did Employer raise any issue concerning the timing requirements of § 287.460 or the granting of a continuance.  In fact, Employer *never* objected on the record to the continuances, something the Commission took note of in its Final Award.[12]  Instead, Employer raised the timing issue for the first time in its Application for Review following the ALJ's award.

Because Employer never objected on the record to any continuance or to a violation of the timing requirements of § 287.460, this point has not been preserved.  Accordingly, the point is denied.[13]

---

[11] Considering the reasoning for its objections, we find it interesting that Employer is now raising an issue with the continuances, as those continuances benefited Employer by allowing it to fully cross-examine Employee at the later hearing dates as it requested.

[12] Employer also asserts in its reply brief that it submitted a brief on November 24, 2020 in which it argued the matter should be dismissed, but notably, this brief has not been included in the record on appeal.  Consequently, we do not consider it.  *Day v. Hupp*, 528 S.W.3d 400, 412 (Mo. App. E.D. 2017) ("[T]his Court will not consider evidence outside the record on appeal." (citation omitted)).

[13] Even if we were to address the issue on the merits, we would be hard pressed to find that the ALJ did not properly exercise discretion where she found that extraordinary circumstances

14

**Point II**

Employer's second point on appeal claims Commission error concerning its PTD determination, arguing the Commission misstated the parties' agreement regarding Employee's MMI date. Specifically, Employer asserts it "only agreed that the employee reached MMI for his physical injuries, in that the employer never accepted or admitted a psychological injury and therefore the employee cannot be determined to be PTD until he has reached MMI for all conditions." (Capitalizations removed). We disagree.

Upon commencing the first hearing, the following colloquy took place:

[EMPLOYEE'S COUNSEL]: Your Honor, could we also – I believe we could stipulate to the MMI date, which was April 12, 2018, when Dr. Bailey released him.

THE COURT: Do all the parties agree to that?

[EMPLOYER'S COUNSEL]: *I do, yes.*

(Emphasis added).

We agree with the Commission's finding, as the transcript confirms the Commission accurately described this stipulation. This short colloquy clearly shows Employer was *not* agreeing Employee reached MMI solely for his physical injury; there was no delineation between any injuries in this stipulated fact. Indeed, Employer's counsel did not even attempt to distinguish this MMI date as only

_____

prevented the conclusion of the final hearing within thirty days, due to Employee's severe and well-documented mental health issues.

15

applying to Employee's physical injury as compared to his mental injury.[14] The Commission simply held Employer to the exact stipulation it made, as it must. "Stipulations are controlling and conclusive, and the courts are bound to enforce them." *Boyer v. Nat'l Express Co.*, 49 S.W.3d 700, 705 (Mo. App. E.D. 2001) (citation omitted).

Further, we disagree with Employer's assertion that "[t]he Commission stated in their respective awards that because the Employer stipulated the MMI date, that the Employer meant to stipulate both the *accepted* back injury and the *alleged, disputed and denied* mental injury." (Emphasis added). The Commission made no such statement, instead finding the following: "At hearing [sic], all parties stipulated to April 12, 2018, the date of Dr. Bailey's release, as the date the employee reached MMI. We find that the employer/insurer's stipulation on this issue, on the record, precludes it from raising this issue on appeal to the Commission." (Internal footnote omitted).

Employer's attempt to bolster its argument by claiming there was an "*accepted* back injury and [an] *alleged, disputed and denied* mental injury" also misconstrues the facts. (Emphasis added). Employer forgets that one of the purposes of the final

---

[14] The SIF also stipulated to this MMI date at the conclusion of the fourth and final hearing. Notably, immediately after the SIF stipulated to the MMI date at the final hearing, the ALJ asked if there was "[a]nything else from the employer," to which the Employer replied "[n]o," thereby once again bypassing the opportunity to assert that such MMI date stipulation only applied to physical injuries as they assert now on appeal.

16

hearing was to resolve "[w]hether the Employee suffered *any* disability[,]" as well as "[w]hether the Employee's work injury was the prevailing factor in causing his need for treatment and resulting disability therefrom[,]" as noted in the ALJ's award and discussed at the first hearing date. (Emphasis added). Considering that evidence is confined "during the hearing to the stated *contested* issues[,]" Employer cannot now claim there was an *accepted* physical injury. *Boyer*, 49 S.W.3d at 705 (emphasis added) (citation omitted). Indeed, the physical injury could not have been accepted since Employer introduced the records and rating report of Dr. Bailey, the latter of which referenced only "a spinal condition" in giving Employee a 12.5% PPD of the body as a whole rating for the work injury,[15] as well as medical records from Employee's personal physician, Dr. Matthew John, which included an appointment note from 2014 indicating Employee was experiencing back pain stemming from his past car accident. Accordingly, by introducing this evidence at the hearing, Employer was clearly demonstrating it did *not* accept a physical injury stemming from the work accident.

Moreover, Employer's point is internally flawed due to its misunderstanding of the ALJ's PTD finding. Employer claims that "[i]n finding Employee totally

---

[15] Notably, Dr. Bailey stated in this rating report, "The source and cause of the medium-duty status is likely *multifactorial* and is reasonably impacted from a *purported* work injury of 03/09/2016 in some manner." (Emphasis added). Indeed, in finding Employee had "a variety of abnormalities in his lumbar spine[,]" Dr. Bailey stated "[s]ome" of these "are related to previous motor vehicle accident and previous pelvic hardware placement and some are *potentially related* to 03/09/2016." (Emphasis added).

17

disabled, the ALJ relied on Dr. Stuckmeyer's amended 2019 report," i.e. a report made *after* the stipulated MMI date of April 12, 2018. Employer asserts that "Dr. Stuckmeyer relied on Dr. Hill's flawed independent psychiatric evaluation. Dr. Hill's report was created at a time when Employee was not stabilized and had not achieved [MMI] for his psychiatric injuries." However, Employer is incorrect in its reading of the ALJ's findings. In determining "Employee . . . sustained permanent total disability as a result of his work injury[,]" the ALJ did not rely on Dr. tuckmeyer's 2019 report but rather the *work restrictions* Dr. Stuckmeyer outlined in his initial November 13, 2018 report. The ALJ found that:

> [B]ased on [Employee's] testimony **and his ongoing restrictions of Dr. Stuckmeyer**, he is disabled from all employment even without considering the preexisting disability which he had stemming from his motor vehicle accident or his prior psychiatric diagnoses. **As such, I find the Employer/Insurer responsible for [PTD] benefits in this matter.**

(Emphasis added). Importantly, the ALJ expressly found these restrictions credible. In fact, in stating her belief that Employee is totally disabled, the ALJ found "the **restrictions of Dr. Stuckmeyer** to be more credible than those of Dr. Alexander Bailey who performed a very extensive surgery on Employee . . . ." (Emphasis added). The ALJ further found "Employee's testimony about his ongoing symptoms credible and consistent with the nature of that surgery." (Emphasis added). This is essential, because it is clear these work restrictions are only in reference to Employee's *physical* injury. The fact that Dr. Stuckmeyer reiterated these work restrictions in his 2019

18

report does not dispense with this reality.[16] Notably, while Dr. Stuckmeyer initially determined Employee had sustained 35% PPD to the body as a whole, the ALJ's award was ultimately based on the *work restrictions*, not the PPD rating, as well as Employee's testimony. Regardless,

> [T]he fact-finder "is not bound by the percentages of disability assigned to a claimant by the medical experts[,]" and can take into consideration a claimant's age, education, and physical abilities, or the lack thereof. *Baxi v. United Techs. Automotive*, 956 S.W.2d 340, 343 (Mo. App. 1997). Finally, the question of disability is not purely a medical one: "The testimony of the claimant or other lay witnesses as to facts within the realm of lay understanding can constitute substantial evidence of the nature, cause, and extent of the disability, especially when taken in connection with, or where supported by, some medical evidence." *Grauberger v. Atlas Van Lines, Inc.*, 419 S.W.3d 795, 801 (Mo. App. 2013) (internal quotation marks omitted).

*Gonzales v. Butterball, L.L.C.*, 457 S.W.3d 880, 888-89 (Mo. App. S.D. 2015) (second alteration in original). Here, the ALJ clearly and appropriately utilized the stipulated MMI date in awarding PTD benefits, finding Employee's psychiatric injury was caused by the physical injury resulting from the work accident.

Lastly, we note that in finding Employee's psychiatric injury was due to the work injury, the ALJ relied on the impression of Dr. Hill, who also found "the nature of [Employee's] psychiatric/psychological problems is of such magnitude that he has suffered *permanent psychiatric/psychological disability*. The treatments recommended are *not curative* by any means, but they may help improve [Employee]'s

---

[16] Moreover, these work restrictions could not be based on Dr. Hill's report, since Dr. Hill's report was not created until after Dr. Stuckmeyer imposed his work restrictions.

*life* on a daily basis going forward and, at least, will help in crisis situations." (Emphasis added). Contrary to Employer's position, such evidence supports that Employee's *psychiatric injury* has reached the point where no further progress is expected, or maximum medical improvement. *See Cardwell v. Treasurer of Mo.*, 249 S.W.3d 902, 910 (Mo. App. E.D. 2008).

Point II is denied.

### Conclusion

For the foregoing reasons, the Final Award of the Commission is affirmed.[17]

_____
W. DOUGLAS THOMSON, JUDGE

All concur.

---

[17] A motion to strike portions of Employee's brief was filed by Employer in this court, taken with the case, and denied.